813 F.Supp. 1396 (1993)
EAST PRAIRIE R-2 SCHOOL DISTRICT, Plaintiff,
v.
U.S. GYPSUM COMPANY and W.R. Grace & Company, Defendants.
No. S88-0122-C.
United States District Court, E.D. Missouri, Southeastern Division.
February 16, 1993.
*1397 Hence Winchester, III, Drumm, Winchester & Gleason, Sikeston, MO, John J. Frank, The John J. Frank Partnership, St. Louis, MO, for plaintiff.
Lawrence C. Friedman, Thompson and Mitchell, St. Louis, MO, Keith A. Cary, Deacy & Deacy, Kansas City, MO, Thomas C. Walsh, Bryan Cave, St. Louis, MO, for defendants.

MEMORANDUM
LIMBAUGH, District Judge.
This matter is before the Court upon a Motion for Partial Summary Judgment filed by defendant W.R. Grace & Co.-Conn. (hereinafter "Grace"). Plaintiff filed a First Amended Complaint on June 26, 1990, based upon diversity subject matter jurisdiction, alleging that defendants were liable to plaintiff based upon defendants': (1) strict liability for product defect; (2) strict liability for failure to warn; (3) negligent manufacture and design; and (4) negligent failure to warn. Defendant Grace moves for partial summary judgment as to plaintiff's claims regarding the East Prairie High School (hereinafter "High School"). Defendant Grace argues that there are no genuine issues of material fact as to Grace's liability for any product in the high school and, therefore, Grace is entitled to partial summary judgment as a matter of law.

I. Standard for Summary Judgment
Courts have repeatedly recognized that summary judgment is a harsh remedy that should be granted only when the moving party has established his right to judgment with such clarity as not to give rise to controversy. New England Life Mut. Ins. Co. v. Null, 554 F.2d 896, 901 (8th Cir. 1977). Summary judgment motions, however, "can be a tool of great utility in removing factually insubstantial cases from crowded dockets, freeing courts' trial time for those that really do raise genuine issues of material fact." Mt. Pleasant v. Associated Elec. Coop. Inc., 838 F.2d 268, 273 (8th Cir.1988).
Pursuant to Fed.R.Civ.P. 56(c), a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 467, 82 S.Ct. 486, 488, 7 L.Ed.2d 458 (1962). The burden is on the moving party. Mt. Pleasant, 838 F.2d at 273. After the moving party discharges this burden, the nonmoving party must do more than show that there is some doubt as to the facts. Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986). Instead, the nonmoving party bears the burden of setting forth specific facts showing that there is sufficient evidence in its favor to allow a jury to return a verdict for it. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).
*1398 In passing on a motion for summary judgment, the court must review the facts in a light most favorable to the party opposing the motion and give that party the benefit of any inferences that logically can be drawn from those facts. Buller v. Buechler, 706 F.2d 844, 846 (8th Cir.1983). The court is required to resolve all conflicts of evidence in favor of the nonmoving party. Robert Johnson Grain Co. v. Chem. Interchange Co., 541 F.2d 207, 210 (8th Cir. 1976). With these principles in mind, the Court turns to an examination of the facts.

II. Facts
In plaintiff's First Amended Complaint, the School District did not identify any particular school building as allegedly containing a Grace product. In response to Grace's interrogatories, plaintiff stated that it believed that defendant Grace's product were in its schools, but awaited further analysis by McCrone Laboratories. In plaintiff's supplemental report containing further analysis referred to in the interrogatory answer, plaintiff's claim that samples from the Doyle Elementary School and Martin Elementary School "have the same constituents" as certain alleged Grace products. The plaintiff's experts were as yet unable to identify the manufacturer of the plaster in the High School.
Defendant Grace avers that the part of the High School involving the alleged asbestos-containing acoustical plaster was constructed in 1957. Grace further alleges that it did not manufacture or sell asbestos-containing products of any kind whatsoever in 1957. Grace alleges that it did not enter the business of making the kind of acoustical plaster product found in the high school until 1963. The High School Annex was built in 1964, after Grace entered the business, and, therefore, any claims of plaintiff regarding the annex will not be addressed in this memorandum.
On January 17, 1963, Grace and Zonolite Company (hereinafter "Zonolite") signed a contract entitled "Agreement and Plan of Reorganization between W.R. Grace & Co. and Zonolite Company." Until 1963, Zonolite was a Montana corporation with its headquarters in Chicago. It was in the business of manufacturing and selling a number of vermiculite-based acoustical plaster and fireproofing products which also contained varying proportions of commercial asbestos. Grace was a chemical company incorporated in Connecticut and headquartered in New York. Grace purchased substantially all of Zonolite's assets, pursuant to the contract, on April 16, 1963. Pursuant to the contract, Grace also agreed to assume:
[A]ll debts and liabilities of Zonolite existing on the Closing whether absolute, contingent or otherwise, and whether or not set forth on, reserved against or reflected in Zonolite's Balance Sheet....
Defendant W.R. Grace & Co.-Conn.'s Motion for Partial Summary Judgment, Exhibit A, p. 2, ¶ 3. The agreement further provides for:
[T]he dissolution of Zonolite and the distribution of said Grace common stock to the stockholders of Zonolite according to their respective interests, in complete liquidation and complete cancellation and redemption of the outstanding common stock of Zonolite....
Exhibit A, p. 1, ¶ 1. The agreement further states that Grace was purchasing:
all of the assets and properties of Zonolite of every type and description, real, personal and mixed, tangible and intangible, and its business as a going concern, including, without limitation, all cash on hand and in banks, stocks, bonds, and other securities, good will, the corporate name "Zonolite" and any variants thereof, trade-marks, trade names, brand names, patents and patent applications and interests thereunder, inventions, processes, know-how, formulae, real estate and interests therein (including leaseholds and all other interests), buildings, machinery, equipment, notes and accounts receivables, books and records, inventories of raw materials, work in process, finished products and supplies, fixtures, contracts, agreements, franchises, funds of whatever nature including unemployment compensation, retirement, industrial accident, pension, and savings *1399 bond funds and all other property and rights of every kind and nature owned or held by Zonolite on the date of the Closing or then used by in its business whether or not specifically referred to in this agreement.
Exhibit A, p. 1, ¶ 2. Finally, the agreement states that pending closing Zonolite would:
use its best efforts to preserve the business organizations of Zonolite, each Wholly Owned Subsidiary and each Subsidiary intact, and to keep available to Grace the services of the present officers, employees, and agents of Zonolite, the Wholly Owned Subsidiaries and the Subsidiaries.
Exhibit A, p. 13, ¶ 11(e).
Prior to the transaction, Zonolite and Grace had no shared officers, directors, debts credits or business assets. Grace did not add any Zonolite representatives to its board of directors nor did it make any change in its corporate officers. After the transaction, the Zonolite shareholders held 2.27 percent of the total Grace common stock. Finally, Zonolite had no control over whether its employees were retained by Grace.
Following the transaction, Zonolite changed its name to Montana Vermiculite Company and remained in existence for over 17 months, retaining certain assets including over $200,000.00 in cash. As already noted, the contract provided for the dissolution of Zonolite and allowed Zonolite to retain only enough cash as Zonolite would need to close the agreement. The agreement further provides that "if the amount of cash retained by Zonolite as aforesaid is in excess of the amount of cash required to pay said expenses, the excess shall be paid over by Zonolite to Grace." Exhibit A, pp. 2-3, ¶ 2. The Contract also provides that Zonolite would have a meeting of stockholders for the purpose of authorizing "the voluntary dissolution of Zonolite following the distribution of its stockholders of shares of Grace common stock in complete liquidation of Zonolite...." Exhibit A, p. 12, ¶ 10. After the agreement was executed in 1963, Grace inserted the "Zonolite Division" and the "Zonolite Company" as named insureds under its liability policies.

III. Analysis
Defendant Grace moves for summary judgment with respect to any claims of plaintiff regarding the High School. Grace argues that since it neither manufactured nor sold the material allegedly installed in that building, it cannot be held directly liable. It further argues that it could not be held liable indirectly as a successor of the original manufacturer or seller. It should be noted that both parties agree that Missouri law is to be used to determine liability. There is some dispute between Grace and plaintiff as to what law should govern the interpretation of any provisions of the agreement between Grace and Zonolite, but this will be addressed later.
Missouri law recognizes four situations in which a corporate "successor" may be held liable for the liabilities of the original manufacturer or seller. In Young v. Fulton Iron Works Co., 709 S.W.2d 927, 938 (Mo.Ct.App.1986) the Court stated:
Where one corporation sells or otherwise transfers all of its assets to another corporation, the latter is not liable for the debts and liabilities of the transferor, except: (1) where the purchaser expressly or impliedly agrees to assume such debts; (2) where the transaction amounts to consolidation or merger of the corporation; (3) where the purchasing corporation is merely a continuation of the selling corporation; or (4) where the transaction is entered into fraudulently in order to escape liability for such debts.
Id. quoting Tucker v. Paxson Machine Co., 645 F.2d 620, 622 (8th Cir.1981). It should be noted that only one of these four situations needs to be present to find liability. Thus, defendant Grace's Motion for Partial Summary Judgment may be defeated if there are genuine issues of material fact as to any of the four. It should also be noted that plaintiff does not argue that Grace entered into the transaction fraudulently to escape liability. The Court, therefore, will not even address this exception.

*1400 A. Mere Continuation
Plaintiff argues that Grace's Motion for Summary Judgment should be denied because Grace was a "mere continuation" of Zonolite. The gravamen of the "mere continuation" exception is the continuation of corporate control and ownership, rather than continuation of business operations. Tucker, 645 F.2d at 625-26. "The majority of courts considering this exception emphasize a common identity of officers, directors, and stock between the selling and purchasing corporations as the key element of a `continuation.'" Id. (citations omitted). In moving for partial summary judgment, defendant Grace argues that the Grace-Zonolite transaction did not establish Grace as a "mere continuation" of Zonolite. In support of their motion, Grace provides the affidavit of Jay W. Hughes, Jr., Litigation Counsel for the Office of Environmental Policy of Grace and Exhibit A, a copy of the agreement between Grace and Zonolite.
Grace points to several statements by Mr. Hughes in his affidavit to support their argument. Prior to the asset sale, Zonolite and Grace had no shared officers, directors, debts, credits or business assets. Aff. ¶¶ 6-7, 9. Grace did not add any Zonolite representatives to its board of directors nor did it make any change in its corporate officers. Aff. ¶ 10. After the sale, the Zonolite shareholders held 2.27 percent of the total Grace common stock. Aff. ¶ 14. Finally, Zonolite had no control over whether its employees would be retained by Grace. Aff. ¶ 11.
Plaintiff does not refute these statements, but rather points to provisions of the agreement, restated in Section II of this Memorandum, to support its argument that Grace is a "mere continuation" of Zonolite. Plaintiff suggests that the contract on the whole establishes the intent of the parties that all of Zonolite's activities would be taken over by Grace and Zonolite would be dissolved. The evidence supplied by defendant Grace and unrefuted by plaintiff, however, is that there was no common identity of officers and directors between Grace and Zonolite. Although the evidence would suggest that Zonolite shareholders held 2.27 percent of the Grace common stock after the agreement, this is insufficient in itself to find common or substantially similar ownership or control such that Grace could be found to be a "mere continuation" of Zonolite. See Adams v. General Dynamics Corp., 405 F.Supp. 1020, 1023 (N.D.Cal.1975). This is especially true when that figure does not even take into account Grace preferred shares. Therefore, plaintiff's argument that Grace is a "mere continuation" of Zonolite fails.

B. De Facto Merger
Next, plaintiff argues that defendant Grace's Motion for Partial Summary Judgment should be denied because the transaction between Grace and Zonolite constituted a de facto merger. A de facto merger cannot occur if the predecessor and successor corporations were strangers and dealt at arms length before and after the transaction; adequate consideration was given for the predecessor's assets; and there was neither a mixture of officers, directors, and shareholders nor any fraud involved in the transaction. Am.Law Prod.Liab.3d, § 7:6, p. 13. In addition, there is case law indicating that a de facto merger may not occur if the predecessor corporation continues to exist after the transaction. Tucker, 645 F.2d at 622-23 n. 6; Santa-Maria v. Owens-Illinois, Inc., 808 F.2d 848, 860-61 (1st Cir.1986).
In the present action, the evidence supplied by Grace would indicate that Grace paid adequate consideration for Zonolite's assets and that the parties dealt at arms length both before and after the sale. Aff. ¶¶ 8, 12. Furthermore, the companies shared no officers, directors, shareholders or assets before the transaction and Zonolite representatives were not added to Grace's board of directors nor were any of Grace's officers changed. Aff. ¶¶ 9-10. As discussed previously, the Zonolite shareholders only held 2.27 percent of the Grace common stock after the transaction. Plaintiffs do not refute this evidence, but argue that the contract, as a whole, establishes the intent of the parties that all of Zonolite's activities would be taken over by *1401 Grace and Zonolite would be dissolved, citing to provisions of Exhibit A of defendant Grace's Motion for Partial Summary Judgment.[1]
The evidence presented by both parties indicates a lack of common or substantially similar ownership or control between Grace and Zonolite. The mere ownership of 2.27 percent of Grace common stock by former Zonolite shareholders is not sufficient to support the finding of a de facto merger. In Adams, 405 F.Supp. at 1023, the District Court found that none of the exceptions to successor liability applied where there were no common officers, directors, principal shareholders or control after the transaction and only two percent of stock was received. Thus, it is the opinion of this Court that the Grace-Zonolite transaction was not a de facto merger.

C. Express or Implied Assumption of Liability
Finally, plaintiff argues that defendant Grace's Motion for Partial Summary Judgment should be denied because Grace expressly or impliedly assumed liability for the asbestos contamination in plaintiff's buildings. In the agreement, Grace agreed to assume:
[A]ll debts and liabilities of Zonolite existing on the Closing whether absolute, contingent or otherwise, and whether or not set forth on, reserved against or reflected in Zonolite's Balance Sheet....
Exhibit A, p. 2, ¶ 3. Defendant argues that New York law is to govern the interpretation of this agreement. Plaintiff, however, argues that Missouri law is applicable, citing Young, 709 S.W.2d at 935. In Young, the Missouri Court of Appeals held that in determining successor liability, the Missouri tort choice of law rules, not Missouri contract choice of law rules should apply. Defendant Grace concedes that Missouri tort choice of law rules, and thereby, Missouri law should apply to plaintiff's claims. Grace, however, argues that in interpreting the liabilities which the parties intended to assume in the agreement, New York law should apply.
Missouri Courts apply the Restatement of Conflicts to both contract and tort choice of law issues. Alfano v. AAIM Management Ass'n, 770 S.W.2d 743, 746 (Mo.Ct.App.1989). The Restatement requires that choice of law considerations be made with respect to the "particular issue" to be decided in each instance. Restatement (Second), Conflicts of Law, §§ 6(2)(c), 145 comment d, 188 comment d (1971). Therefore, the laws of different states may be used to resolve different issues in a single case. Restatement (Second), Conflicts of Law, §§ 145 comment d, 188 comment d (1971). Thus, it is the opinion of the Court that although Missouri law should apply to determine whether or not Grace is liable as a successor for Zonolite's liabilities, contract choice of law provisions should apply to interpretation of the agreement itself.
At the time of the agreement, Grace was headquartered in New York and the agreement itself expressly provides that it is to be interpreted according to the law of New York. Appendix A, p. 19, ¶ 23. The general rule in Missouri is that the law of the place intended by the parties shall govern the interpretation of a contract. Nakao v. Nakao, 602 S.W.2d 223, 226 (Mo. Ct.App.1980). In Grant-Howard Associates v. General Housewares Corp., 63 N.Y.2d 291, 482 N.Y.S.2d 225, 472 N.E.2d 1 (1984), the Court addressed the assumption of liability issue. In Grant-Howard, the allegedly defective product was sold by the defendant's predecessor in 1967. The asset purchase took place in 1969, and the personal *1402 injury occurred in 1974. The successor corporation had agreed to assume all liabilities of its predecessor which existed at the closing date. The Court rejected plaintiff's argument that the injury was a contingent liability because the defective product was purchased before the asset transfer. The Court stated:
This is not persuasive. A tort action does not accrue until injury occurs.... An uninjured party simply is not a "contingent liability" in the usual sense of that term (see, e.g., Black's Law Dictionary [5th ed.], p. 291 ["A potential liability, e.g. pending lawsuit"]). There is no liability or claim before injury occurs. Granted that "contingency" invokes uncertain events, the uncertainty should be restricted to the success of asserting an existing claim, rather than expanding it to include the altogether unpredictable event that an injury will occur. Were plaintiffs' position to be adopted, a purchaser would be unable to meaningfully limit its liability as every item ever sold by the predecessor would be a potential source of assumed liability.
Id., 482 N.Y.S.2d at 227-28, 472 N.E.2d at 3-4. Plaintiff argues that Grant-Howard is inapplicable to the present action because that case involved personal injury and the injured party's claim did not exist until he suffered injury. Plaintiff argues that plaintiff's property damage did exist on the date of closing of the Grace-Zonolite agreement, although plaintiff was unaware of that fact. Based upon the language in Grant-Howard, it is this Court's opinion that the tort action must have accrued at the time of assumption of liabilities. In Kansas City v. W.R. Grace & Co., 778 S.W.2d 264, 268 (Mo.Ct.App.1989), the Missouri Ct. of Appeals held that in order for a cause of action in tort for asbestos contamination to accrue, release of toxic asbestos fibers into the environment is necessary, together with the ability to ascertain a substantial and unreasonable risk of harm from the release of the toxic asbestos fibers. Id. See also John L. May, Archbishop of St. Louis v. AC & S, Inc., 812 F.Supp. 934 (E.D.Mo.1993), Eastern District of Missouri. Plaintiff's cause of action for property damage based upon asbestos contamination had not accrued, therefore, at the time of the agreement. Based upon the Grant-Howard decision, defendant Grace did not expressly or impliedly assume the liabilities of Zonolite for such property damage. Thus, plaintiff's argument that Grace expressly or impliedly assumed the liabilities of Zonolite for asbestos contamination in plaintiff's High School fails.
It is, therefore, the opinion of this Court that defendant Grace's Motion for Partial Summary Judgment should be granted as to claims arising in plaintiff's High School because there are no genuine issues of material fact and Grace is entitled to judgment as a matter of law in that Grace was not making acoustical plaster at the time it was installed in plaintiff's High School and may not be held liable for the liabilities of its predecessor, Zonolite. It should be noted that plaintiff's claims as to the High School annex are not dismissed, however, because the evidence presented by plaintiff and undisputed by Grace is that the Annex was built in 1964, at a time when Grace was making acoustical plaster.
NOTES
[1] The Court recognizes that in Harashe v. Flintkote Co., 848 S.W.2d 506 (1993), Missouri Court of Appeals, Eastern District, the Court held that the transaction between Grace and Zonolite constituted a de facto merger. In that decision, however, the Court doubted that the successor liability issue had been properly preserved for appeal. Furthermore, the Court of Appeals based its decision solely upon the agreement between Grace and Zonolite, without further testimony or evidence. In the present case, the Hughes' affidavit and deposition testimony by George C. Blackwood, vice-president of Grace in charge of the 1963 Zonolite transaction, support this Court's holding that there was no de facto merger. This Court, therefore, declines to follow the Harashe decision.