T.H.S. NORTHSTAR ASSOCIATES,
Limited Partnership, a Minnesota
Limited Partnership, Plaintiff,

v.

W.R. GRACE AND CO.–CONN., Connecticut Corporation, Successor in Interest to Western Mineral Products Co. and Zonolite Co., Defendant.

Civ. No. 3–87–676.

United States District Court,
D. Minnesota,
Third Division.

Dec. 14, 1993.

Floyd Earl Siefferman, Jr., Saliterman & Siefferman, Minneapolis, MN, Philip J. Goodman, Simpson & Berry, Birmingham, MI, Kenneth B. McClain, Humphrey, Farrington & McClain, Independence, MO, John M. Klamann, Payne & Jones, Overland, KS, for T.H.S. Northstar Associates.

G. Marc Whitehead, Hugh V. Plunkett, John Caldwell Childs, Popham Haik Schnobrich & Kaufman, Minneapolis, MN, Harold J. Engel, Popham, Haik, Schnobrich & Kaufman, Washington, DC, for W.R. Grace & Co.

Thomas Victor Seifert, Marianne Eileen Durkin, Head, Hempel, Seifert & Vander Weide, Minneapolis, MN, for National Gypsum Co.

## MEMORANDUM OPINION AND ORDER

RENNER, District Judge.

Before the Court are the parties' cross-motions for partial summary judgment on the issue of whether W.R. Grace is liable as successor in interest to Western Mineral Products Company and the Zonolite Company.

This matter arises from the presence of asbestos-containing fireproofing, known as Monokote, in the Northstar Center in Minneapolis, Minnesota. Plaintiff, T.H.S. Northstar ("Northstar"), claims that because of the health hazards of asbestos, it has been forced to remove and replace the fireproofing at considerable cost. Northstar contends that W.R. Grace ("Grace") is liable for such costs both as the manufacturer of Monokote and as a successor in interest to the manufacturer, distributer or seller of Monokote, under the following theories alleged in its Second Amended Complaint: 1) restitution; 2) negligence; 3) strict liability; 4) fraud and mis-

representation; and 5) breach of express and implied warranty. Each party asserts that it is entitled to summary judgment on the issue of successor liability.

## I. Summary Judgment Standard

Pursuant to Fed.R.Civ.P. 56(c), a district court may grant summary judgment if the evidence shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The moving party bears the initial burden of establishing the non-existence of a genuine issue of material fact. *Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. at 2552; *City of Mt. Pleasant, Iowa v. Assoc. Elec. Co-op.,* 838 F.2d 268, 273 (8th Cir.1988). Once it meets that burden, the nonmoving party may not then "rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

## II. Facts

Northstar contends that Grace is a successor in interest to Western Mineral Products Co. by express merger. Northstar cites as evidence the merger agreement between Grace and Western Mineral. It shows that Grace formally merged with Western Mineral Co. in 1966 and, pursuant to the agreement, expressly assumed "all debts, liabilities and obligations" of Western Mineral. Grace does not dispute that it merged with Western Mineral.

Northstar further contends that Grace is a successor in interest to the Zonolite Company because Grace expressly or implicitly assumed Zonolite's liabilities through a purchase agreement and, alternatively, because the purchase constituted a de facto merger. Northstar submits in support several purchase documents, including the Agreement and Plan of Reorganization, Grace's request for capital appropriation and the Zonolite Company proxy statement, setting forth the terms and conditions of the purchase. Under the agreement, Grace acquired substan-

tially all of Zonolite's properties and assets, including its business as a going concern, its name, know-how, formulae and contracts, in exchange "solely for a part of the common stock of Grace." The agreement required Zonolite to voluntarily dissolve and completely liquidate as soon as practicable after closing. Zonolite agreed to retain only the cash necessary for winding up and return any surplus to Grace. The documents further show the parties' intent to maintain a continuity of management and, specifically, required Grace to retain Zonolite President Joseph Kelly for five years. Finally, under the agreement, Grace assumed "all debts and liabilities of Zonolite existing on the Closing, whether absolute, contingent or otherwise."

Grace argues that the transaction constituted an asset purchase rather than a merger and provides evidence in the form of an affidavit of Jay Hughes and the deposition of George Blackwood. This evidence clearly shows that Zonolite remained in business as the Montana Vermiculite Company for seventeen months after closing; that Montana Vermiculite retained Zonolite assets of over $200,000 in cash; that Grace neither added any Zonolite representatives to its board of directors nor changed its officers; and that Zonolite shareholders held only 2.27 percent of Grace stock subsequent to the acquisition.

## III. Analysis

### A. Choice of Law

■ Grace contends that New York law governs the successor liability issue by reason of a choice of law clause in the Grace–Zonolite agreement.

In deciding whether to give effect to the choice of law provision, the Court notes that Northstar advances two distinct theories upon which successor liability as to Zonolite may rest: express assumption of liability and de facto merger. In determining whether Grace contractually assumed liability, the Court would be inclined to enforce the choice of law clause and apply New York law to the interpretation of the contract terms. The Court does not reach this issue as a basis for

successor liability however, and thus does not rule on the governing law.

The choice of law provision does not as clearly govern de facto merger. Whether the agreement between Zonolite and Grace amounted to a merger does not involve construction, interpretation or enforcement of the contract. The contract simply provides evidence of the nature of the Zonolite–Grace relationship. The contracting parties could not have controlled, through express contractual language, whether their agreement in fact constituted a merger. As the dispute does not arise from the agreement itself, it falls outside of the choice of law provision. *See East Prairie R–2 School Dist. v. U.S. Gypsum Co.* 813 F.Supp. 1396, 1401 (E.D.Mo.1993). Therefore, Minnesota law, which governs the claims in this action, applies to the de facto merger theory of successor liability.

### B. Successor Liability

■ Minnesota follows the traditional rule of successor liability.

[W]here one corporation sells or otherwise transfers all of its assets to another corporation, the latter is not liable for the debts and liabilities of the transferor, except: (1) where the purchaser expressly or impliedly agrees to assume such debts; (2) where the transaction amounts to a consolidation or merger of the corporation; (3) where the purchasing corporation is merely a continuation of the selling corporation; and (4) where the transaction is entered into fraudulently in order to escape liability for such debts.

*Niccum v. Hydra Tool,* 438 N.W.2d 96, 98 (Minn.1989). Although Minnesota has not expressly adopted the de facto merger doctrine, the second exception necessarily incorporates that doctrine for the purpose of finding successor liability. Courts applying this exception as a basis of successor liability recognize four elements of a de facto merger:

(1) continuity of management, personnel, assets and operations; (2) continuity of

shareholders which results from the purchasing corporation paying for the acquired assets with shares of its own stock; (3) that the seller ceases operations, liquidates, and dissolves as soon as legally and practically possible; and (4) that the purchasing entity assumes the obligations of the seller necessary for uninterrupted continuation of business operations.

*Keller v. Clark Equipment Co.,* 715 F.2d 1280, 1291 (8th Cir.1983); *Soo Line R. Co. v. B.J. Carney & Co.,* 797 F.Supp. 1472, 1483 (D.Minn.1992). A court need not find every element to conclude that a de facto merger occurred. *Harashe v. Flintkote Co.,* 848 S.W.2d 506, 509 (Mo.Ct.App.E.D.1993). The key factor in distinguishing between a merger and an asset purchase is the second, the continuity of shareholders resulting from an exchange of stock, rather than cash, for assets. *See Sylvester Bros. Dev. Co. v. Burlington Northern RR,* 772 F.Supp. 443, 448 & n. 5 (D.Minn.1990); *Everest v. Am. Transp. Corp.,* 685 F.Supp. 203, 206 (D.Minn.1988); *Johnston v. Amsted Indus., Inc.,* 830 P.2d 1141, 1146–47 (Colo.Ct.App.1992).

The Court finds that Grace assumed all liabilities of Western Mineral in an express merger agreement, thereby satisfying the first exception to the successor liability rule. Grace submits no evidence on this issue and, thus, the Court finds Grace a successor in interest to Western Mineral Products Co.

With regard to the Zonolite acquisition, Grace urges this Court to follow *East Prairie,* 813 F.Supp. 1396 (E.D.Mo.1993), an Eastern District of Missouri decision. This case held that Grace was not a successor in interest to Zonolite. The *East Prairie* court declined to follow a Missouri Court of Appeals decision, *Harashe v. Flintkote Co.* 848 S.W.2d 506 (Mo.Ct.App.E.D.1993), which reached the opposite result. The *East Prairie* court based its decision primarily on the small percentage of Grace shares held by former Zonolite stockholders and the lack of mutual officers and directors.

The Court views *East Prairie*'s application of the de facto merger doctrine as too

narrow. Here, the undisputed evidence satisfies each element of a de facto merger. Following the acquisition there was a continuity of management, personnel, assets, and operations. Zonolite dissolved and liquidated pursuant to the agreement while Grace assumed the obligations necessary to continue Zonolite's business operations. After the transaction, the Zonolite shareholders became Grace shareholders; Grace paid for the Zonolite assets solely with shares of its own stock rather than cash. This continuity of shareholders, rather than the percentage of ownership assumed, is significant to a finding of merger. Contrary to the conclusion in *East Prairie*, Zonolite did not remain at arms length with Grace subsequent to the acquisition. Rather, Grace created the "Zonolite Division" and continued the operations of Zonolite through the use of its expertise and personnel. Furthermore, the testimony of Grace employees relied upon in *East Prairie* fails to raise a genuine issue of material fact as to the true nature of the Grace–Zonolite transaction. As a matter of law, the transaction amounted to a merger for the purpose of successor liability. Therefore, the Court finds Grace liable as a successor in interest to both Western Mineral Products Company and the Zonolite Company.

Accordingly, based upon the above and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that the plaintiff's motion for partial summary judgment is **GRANTED** and the defendant's motion for partial summary judgment is **DENIED. LET JUDGMENT BE ENTERED ACCORDINGLY.**