T. R. Fitzwater and Celestia Fitzwater

*v.*

Jerry W. Spangler and Felts Transport Corporation, A Virginia Corporation

(No. 12483)

Submitted January 18, 1966.        Decided March 22, 1966.

*G. Berk Lynch,* for appellants.

*Bowers, File, Hodson & Payne, W. H. File, Jr., Donald D. Hodson,* for appellees.

BROWNING, JUDGE:

Plaintiffs, T. R. and Celestia Fitzwater, instituted this action in the Circuit Court of Raleigh County to recover for personal injury and property damage arising out of a collision between an automobile, owned by Celestia Fitzwater and operated by T. R. Fitzwater, and a tractor-trailer, owned by Felts Transportation Corporation and operated by Jerry W. Spangler. A jury returned a verdict in favor of the plaintiffs for $25,200, judgment was entered thereon, defendants' motion to set aside the judgment and verdict was overruled, and, on application of the defendants, this Court granted an appeal on June 28, 1965. Errors assigned in this Court are the failure of the trial court to direct a verdict for defendants, and thereafter refusing to set aside the verdict, on the ground that plaintiffs had failed to prove any negligence on the part of defendants by a preponderance of the evidence, and the giving and refusal to give certain instructions. T. R. Fitzwater and Jerry W. Spangler, the operators of the vehicles involved, will be hereinafter referred to, respectively, as plaintiff and defendant as if they were the sole parties.

The collision occurred at approximately 8:30 A.M., January 22, 1963, on State Route No. 3 between the cities of Beckley and Hinton, West Virginia, and all witnesses stated that the sun was very bright at that time. State Route No. 3 in the vicinity of the accident runs generally in an east-west direction, is approximately twenty-one feet wide with a berm adjacent to the east-bound lane of five feet to seven feet and a berm on the west-bound lane varying from four feet

to a much wider area at the entrance of a secondary road. At the point of collision, the highway curves to the right as one proceeds in an easterly direction toward Hinton.

Mr. Shorter, a passenger in plaintiff's automobile, testified in behalf of plaintiff that: he and plaintiff were proceeding east to Hinton; plaintiff approached the curve at twenty-five to thirty miles per hour on his side of the road; he did not see the defendant's truck until "just an instant before we hit"; at the instant of impact the truck was "on our side of the highway"; plaintiff was thrown out by the collision and, upon being helped to a sitting position by the witness and defendant, stated in answer to a question by defendant that "he was asleep"; plaintiff was not asleep at the time of the collision; and, plaintiff's car, after the collision, was perpendicular to the center line of the highway on plaintiff's side of the road. On cross-examination, the witness admitted that he had previously made a deposition in which he had stated that: "When we got to the curve the sun hit the windshield and I couldn't see nothing"; such answer was correct, and that on direct examination he meant only that as plaintiff went into the curve he was on his side of the road; at the instant of collision he does not know which side of the road either plaintiff or defendant was on; and, he only knows that plaintiff was on his side of the road "when we went into the curve".

Plaintiff testified that: he reduced his speed to twenty-five or thirty miles an hour to go around the curve, knowing it to be a very dangerous one; his sun visor was down; in answer to a question as to whether he saw the truck coming, he stated, "Well, I was sitting up this way (indicating) to where I could look real close over to the road to watch, and I were watching the road, and knowing I was just starting to come out of the curve, raised up my head this way to look forward on ahead, and, just as I looked up the truck came at me"; he was definitely on his own side of the highway; and he was knocked unconscious by the collision and does not remember anything until several days later. On cross-examination plaintiff stated that he had worked the night before and was on his way home; he was

only looking ahead one car length; he only saw the de- fendant's truck "just as it came up on me"; in answer to a question as to whether he knew which side of the road the truck was on at the time of the collision, he replied: "Well, it was undoubtedly partly on my side or he wouldn't have caught me", but, he could not definitely say, "It was so quick, you see. . . . Other than I thought I was on my side."

Defendant adduced the testimony of Mr. A. E. Bumgardner, a member of the department of public safety, who investigated the accident. Trooper Bumgardner stated: when he arrived at the scene, the tractor-trailer was on its own side of the road, the right front wheel of the tractor being six feet nine inches and the rear wheel six feet three inches on the berm; plaintiff's vehicle was crossways in the road with the rear end thereof four feet on the berm on its side of the road; the main concentration of debris was located two feet six inches from the center line in the defendant's lane of travel; there were no skid marks; and both vehicles were damaged on the left front. Defendant testified that he was proceeding in a westerly direction in his lane at a speed of twenty to twenty-five miles per hour; he saw plaintiff's automobile approximately seventy-five yards away in his proper lane; he noticed plaintiff coming into the curve too fast; he applied his brakes and swerved to the right when plaintiff hit his left front wheel; plaintiff was in defendant's lane at impact; he stopped, "Practically right there" with the right side of his vehicle, at least the tractor, off the highway; the dirt and debris was in his lane; and, he asked plaintiff what had happened and plaintiff "told me that he thought he was asleep". On cross-examination, defendant testified that his vehicle was eight feet wide, the tractor being seventeen feet to eighteen feet long, the trailer thirty-three feet ten inches long and weighing 11,500 pounds; and, his vehicle only went a foot or two after the collision.

The testimony related above, in behalf of both the plaintiff and defendant, was the only pertinent testimony offered relating to the issue of liability. A motion by the defendant for a directed verdict was overruled and, as heretofore

stated, the case was submitted to a jury which returned a verdict in favor of plaintiff.

Perhaps the most fundamental rule of our system of jurisprudence is that questions of fact are to be determined by a jury and questions of law by a court. In this case a jury has passed upon the facts and an able trial judge has entered judgment upon its verdict. When a case comes to this Court under those circumstances it presents a difficult question indeed. For while questions of fact are for a jury normally, it is just as well established in our law that where there is no evidence to support a verdict, or where it is against the plain preponderance of conflicting evidence, or the governing facts are not in dispute so that reasonable minds could draw but one conclusion therefrom, the questions of primary and contributory negligence are for judicial determination as a matter of law. *Petros* v. *Kellas,* 146 W. Va. 619, 122 S. E. 2d 177; *Wood* v. *Shrewsbury,* 117 W. Va. 569, 186 S. E. 294. Inasmuch as this Court has decided that upon the evidence in this case, the circumstances shown thereby and the physical facts that this verdict for the plaintiff cannot stand, it becomes necessary if this opinion is to serve its purpose to recite the pertinent testimony a little more fully than was heretofore done. The highway running between Beckley and Hinton curved to the right and slightly uphill as regards the plaintiff's vehicle and, of course, conversely as to the defendant's truck. It is true that on several occasions while he was on the witness stand the plaintiff Fitzwater said he was on his side of the highway when the collision occurred but on cross-examination the plaintiff admitted that he did not see the defendant's truck before the accident happened; he had his sun visor down and was only trying to see ahead a distance of one car length; and, in a discovery deposition he was asked, "You are not able to testify that he was over the center of the road on your side?", to which question he replied, "Well, to tell the truth, I couldn't say, because you know I think I would be saying something I am not positive of, and I wouldn't do that." Plaintiff's passenger, Shorter, who was sitting in the front seat when the collision occurred stated on direct examination that he did not observe the truck that hit them

for any length of time before the impact, and, when asked this question, "Q. Did you see it at or before the impact?", answered, "No." When asked on which side of the road the truck was, the witness said: "He would have to be on our side." However, when asked another question as to the position of the truck at the time of impact, this witness said: "The truck was over on our side of the highway." He also stated that he was "knocked out maybe just for an instant, . . . ." This witness, on direct examination, was asked whether Mr. Fitzwater, in answer to a question by the truck driver, Mr. Spangler, immediately after the collision, how he "come to hit him", and that Fitzwater said "he was asleep". However in the following question he was asked if Fitzwater was asleep at that time and he answered in the negative. He admitted on cross-examination that he had stated in his discovery deposition that he could not testify as to "which side of the road Mr. Fitzwater's car was on at the time of the accident". He answered similarly with reference to the position of the truck on the highway. However, he did say in answer to a question, "I know we were on our side when we went in the curve. I do know that. And like I say when the sun hit the windshield I couldn't see any more, but we were on our side when we started into that curve, well into the curve." The testimony of A. E. Bumgardner, the state policeman who investigated the accident very shortly after it occurred, is substantially uncontradicted. In addition to that part of his testimony which has been heretofore quoted he testified that "the main body of this debris" [the alleged point of impact according to this witness] was two feet and six inches from the center line into the traffic lane of the defendant's truck. As heretofore stated, there is no conflict in this witness's testimony concerning the relative positions of the vehicles at the time he saw them.

It is true that this Court has held that the location of debris upon the highway following a collision is not conclusive as to the point of impact, *Bronson* v. *Riffe,* 148 W. Va. 362, 135 S. E. 2d 244; *Scales* v. *Majestic Steam Laundry,* 114 W. Va. 355, 171 S. E. 899, and certainly this Court does not find it to be so upon the facts of this case. It is also

true that debris was found scattered apart from the main position thereof but no witness denied what the state policeman testified to that the main part of it was in the lane of the defendant truck driver. It would be stretching the credulity of a human mind far indeed to ask it to accept the fact that the collision occurred in the plaintiff's lane of traffic and that the Buick car knocked or forced the 11,500 pound truck across the center line, across the truck's lane of traffic and partially onto the berm of the highway. It will be noted that there is no basic conflict in the evidence. Defendant testifies that the accident happened on his side of the road, and the physical facts tend to corroborate that statement. Plaintiff and his passenger both admit that in the final analysis they do not know where the accident occurred but think that, because they were on their side of the highway when they went into the curve, the collision, which happened approximately midway of the curve, must have occurred on their side of the road. This does not necessarily follow and there was, therefore, no evidence, direct or circumstantial, that the accident in fact occurred on plaintiff's side of the road. "The verdict of a jury in favor of a plaintiff, based on testimony which does nothing more than furnish ground for conjecture or speculation, as to the proper verdict to be returned, can not be justified, and will be set aside by this Court." Syl. Pt. 6, *Shatzer v. Freeport Coal Co.*, 144 W. Va. 178, 107 S. E. 2d 503.

The judgment of the Circuit Court of Raleigh County is reversed and the case is remanded to that court for further disposition not in conflict with the mandate of this Court.

*Reversed and remanded.*