454 S.E.2d 413

**In re STATE of West Virginia PUBLIC BUILDING ASBESTOS LITIGATION. (Three Cases).**

**Nos. 22023–22025.**

Supreme Court of Appeals of West Virginia.

Submitted Nov. 2, 1994.

Decided Dec. 21, 1994.

Concurring Opinion by Justice Cleckley Jan. 6, 1995.

122

Arthur M. Recht, Patrick S. Casey, Schrader, Recht, Byrd, Byrum & Companion, Wheeling, Frank E. Simmerman, Jr., Bowles, Rice, McDavid, Graff & Love, Clarksburg, James J. Restivo, Jr., Lawrence E. Flatley, Douglas E. Cameron, George L. Stewart II, of counsel, Reed, Smith, Shaw & McClay, for appellant W.R. Grace & Co.

Thomas R. Goodwin, Susan C. Wittemeier, Goodwin & Goodwin, Charleston, Charles R. Bruton, Richard W. Foltz, Jr., of counsel,

Pepper, Hamilton & Scheetz, Philadelphia, PA, for appellant Pfizer, Inc.

Diana Everett, Ruley & Everett, Parkersburg, Robert D. Brownson, of counsel, Stich, Angell, Kreidler & Muth, Minneapolis, MN, for appellant Asbestospray.

Darrell V. McGraw, Jr., Atty. Gen. Silas B. Taylor, Sr. Deputy Atty. Gen., Charleston, Thomas R. Sheran, R. Terri Mandel, Michael J. Luzum, O'Connor & Hannan, Minneapolis, MN, for appellees.

James A. Varner, Catherine D. Munster, McNeer, Highland & McMunn, Clarksburg, for amicus curiae Armstrong World Industries, Inc.

McHUGH, Justice:

The appellants, Asbestospray Corporation, Pfizer, Inc., and W.R. Grace & Co., appeal the September 14, 1993 order of the Circuit Court of Monongalia County which vacated the jury's verdict for the appellants and granted a new trial. This case arose as an asbestos property damage case in which the appellees, the State of West Virginia, the City of Spencer and the Monroe County Commission, sought monetary relief for the removal and/or management of asbestos from its public buildings.

## I.

The appellants were the manufacturers of the asbestos-containing building materials that may have been installed in twenty-six buildings throughout the State between 1958 and 1973. The appellees filed an action seeking monetary relief for the removal and/or management of the asbestos from its public buildings against the appellants.

After a six-month trial, in which a tremendous amount of evidence was presented to the jury, the trial judge instructed the jury that the asbestos-containing products involved in this case are defective as a matter of law. Therefore, the jury only was to consider whether the appellants' products were present in one or more buildings, and if their products were present, the amount of damages which should be awarded to the appellees, including past and future costs for in-place management and/or removal.

The jury returned a verdict finding that the appellees were entitled to no damages. Thereafter, the trial judge vacated the jury verdict in a September 14, 1993 order stating:

> The Court DIRECTED LIABILITY as a matter of law that asbestos-containing products are inherently dangerous products. This left for the jury the issue of whether the plaintiffs proved that the respective defendants had such products in the buildings at issue, and, if so, the damages resulting from their presence. Therefore, the Court did not direct liability as to any one or more specific defendants. However, during the trial, on the issue of product identification, the existence of a defendant's product was admitted to be in several of the plaintiff's [sic] buildings by more than one of the defendants. Additionally, there was more than substantial evidence that all defendants had products in one or more of the subject buildings. There was also an abundance of evidence on the cost of maintenance, removal, and/or repair relating to the products. Nevertheless, the jury returned a verdict of '0' damages. This verdict is manifestly inadequate given the proof presented in the trial of this matter.

The trial judge went on to state that the jury verdict was a "type 1" inadequate award under *Freshwater v. Booth*, 160 W.Va. 156, 233 S.E.2d 312 (1977);[1] therefore, he vacated the jury's verdict and awarded a new trial only on the issues of product identification and damages.

---

[1] The Court in *Freshwater* described a type I case as follows:

The easiest type of inadequate jury award is where the plaintiff would have been entitled to a directed verdict on liability as a matter of law, and the damages are inadequate even when viewed most strongly in favor of the defendant. In this type of case an appellate court need not agonize about reversing and remanding for a new trial on the issue of damages alone and that is the proper course. *Freshwater, supra,* at 160, 233 S.E.2d at 315. Additionally, although it does not affect a type I analysis, *Freshwater* was overruled, in part, in *Linville v. Moss*, 189 W.Va. 570, 433 S.E.2d 281 (1993).

The appellants have asked us to review the trial judge's September 14, 1993 order. After arguments before this Court on May 4, 1994, this Court requested the parties to provide additional information to assist it with its examination of the voluminous record. Thereafter, the parties reargued the case before this Court on November 2, 1994.

## II.

The first issue is whether the trial judge improperly vacated the jury's verdict and awarded a new trial. In order to resolve this issue, it is necessary to establish the appropriate standard of review of the trial judge's decision.

■ A trial judge has the authority to vacate a jury verdict and award a new trial pursuant to Rule 59 of the *West Virginia Rules of Civil Procedure* which states, in relevant part: "A new trial may be granted to all or any of the parties and on all or part of the issues . . . in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law[.]" Rule 59 merely recognizes the common law principle that a judge may vacate a verdict of the jury. 11 Charles Alan Wright and Arthur R. Miller, *Federal Practice and Procedure* § 2801 at 27 (1973).[2]

■ Although the trial judge should rarely grant a new trial, the trial judge, nevertheless, has broad discretion to determine whether or not a new trial should be granted: "Courts do not grant new trials unless it is reasonably clear that prejudicial error has crept into the record or that substantial justice has not been done. . . . Ultimately the motion invokes the sound discretion of the trial court, and appellate review of its ruling is quite limited." Wright & Miller, *supra* at § 2803 at 32–33 (footnotes omitted). However, it has been pointed out:

There are few subjects in the entire field of procedure that have been subject to so much change and controversy in recent years as the proper scope of review of an order granting or denying a motion for a new trial. The trial court has very broad discretion and the appellate courts will defer a great deal to his exercise of this discretion. This much is settled.

Wright & Miller, *supra* at § 2818 at 118.

■ On several occasions this Court has addressed the standard of review to be accorded to the decision of the trial judge to set aside a jury verdict and award a new trial. In syllabus points 4 and 5 of *Kesner v. Trenton*, 158 W.Va. 997, 216 S.E.2d 880 (1975), this Court held:

4. 'The judgment of a trial court in setting aside a verdict and awarding a new trial is entitled to peculiar weight and its action in this respect will not be disturbed on appeal unless plainly unwarranted.' *Syllabus* point 3., *Young v. Duffield*, 152 W.Va. 283, 162 S.E.2d 285 (1968).

5. The test in reviewing a judgment setting aside a jury verdict and awarding a new trial is whether the trial court's discretion in supervising verdicts, so as to prevent a miscarriage of justice, has been abused.

Additionally, in syllabus points 2 and 4 of *Young v. Duffield*, 152 W.Va. 283, 162 S.E.2d 285 (1968) this Court further provided:

2. 'It takes a stronger case in an appellate court to reverse a judgment awarding a new trial than one denying it and giving judgment against the party claiming to have been aggrieved.' Point 1, Syllabus, *The Star Piano Co. v. Brockmeyer*, 78 W.Va. 780 [, 90 S.E. 338 (1916) ].

4. An appellate court is more disposed to affirm the action of a trial court in setting aside a verdict and granting a new

---

**2.** Rule 59 of the *Federal Civil Judicial Procedure and Rules* states, in relevant part: "A new trial may be granted to all or any of the parties and on all or part of the issues (1) in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States[.]"

Although there are language differences between *W.Va.R.Civ.P.* 59 and Rule 59 of the *Federal Civil Judicial Procedure and Rules*, the purpose behind the two rules is substantially the same. Therefore, we will examine explanations regarding the federal counterpart to *W.Va.R.Civ.P.* 59 in order to aid our understanding of Rule 59.

trial than when such action results in a final judgment denying a new trial.

Another syllabus by this Court emphasizes the legal principle that this Court will not review an order setting aside a jury verdict and awarding a new trial unless it was an abuse of discretion for the trial judge to enter such order:

> A trial judge is not merely a referee but is vested with discretion in supervising verdicts and preventing miscarriages of justice, with the power and duty to set a jury verdict aside and award a new trial if it is plainly wrong even if it is supported by some evidence, and when a trial judge so acts, his decision, being in discharge of his power and duty to pass upon the weight of the evidence to that limited extent, is entitled to peculiar weight and will not be disturbed on appeal unless clearly unwarranted.

Syl. pt. 1, *Cook v. Harris,* 159 W.Va. 641, 225 S.E.2d 676 (1976).

This Court, however, has previously interjected itself into the analysis of whether a new trial was properly granted by setting forth standards regarding how the evidence should be weighed:

> 'In determining whether the verdict of a jury is supported by the evidence, every reasonable and legitimate inference, fairly arising from the evidence in favor of the party for whom the verdict was returned, must be considered, and those facts, which the jury might properly find under the evidence, must be assumed as true.' Syllabus point 3, *Walker v. Monongahela Power Company,* 147 W.Va. 825, 131 S.E.2d 736 (1963).

Syl. pt. 3, *McNeely v. Frich,* 187 W.Va. 26, 415 S.E.2d 267 (1992).[3] However, this type of analysis is misleading in light of the purpose of Rule 59.

Under Rule 59, the trial judge has the authority to weigh the evidence as if he or she were a member of the jury. 3 Charles Alan Wright, *Federal Practice and Procedure* § 553 at 247 (2d ed. 1982). As Charles Wright explains:

> [O]n a motion for a new trial—unlike a motion for a directed verdict or for judgment notwithstanding the verdict—the judge may set aside the verdict even though there is substantial evidence to support it. He is not required to take that view of the evidence most favorable to the verdict-winner. The mere fact that the evidence is in conflict is not enough to set aside the verdict. Indeed the more sharply the evidence conflicts, the more reluctant the judge should be to substitute his judgment for that of the jury. But on a motion for a new trial on the ground that the verdict is against the weight of the evidence, the judge is free to weigh the evidence for himself. Indeed it has been said that the granting of a new trial on the ground that the verdict is against the weight of the evidence 'involves an element of discretion which goes further than the mere sufficiency of the evidence. It embraces all the reasons which inhere in the integrity of the jury system itself.'

11 Wright & Miller, *supra* at § 2806 at 43–45 (1973) (footnotes omitted). After all, "[t]he trial judge was on the spot and is better able than an appellate court to decide whether the error affected the substantial rights of the parties." *Id.* at § 2818 at 119–20. Similarly, this Court has recognized when addressing the trial judge's authority to award a new trial that "[t]he trial court has opportunities to observe many things in the course of a trial which the printed record presented to an appellate court does not disclose[.]" *Browning v. Monongahela Transport Co.,* 126 W.Va. 195, 203, 27 S.E.2d 481, 485 (1943). The United States Court of Appeals of the

---

3. In *McNeely,* this Court relied on syllabus point 3 from *Walker v. Monongahela Power Co.,* 147 W.Va. 825, 131 S.E.2d 736 (1963). In *Walker,* this Court was required to determine whether the trial court's decision not to grant a new trial was proper. The analysis in *Walker* is different from the analysis which should have been used in *McNeely* in order to determine whether this Court could reverse the trial court's order grant-ing a new trial. We note that *McNeely, supra,* is a per curiam opinion. In syllabus point 2 of *Graf v. West Virginia University,* 189 W.Va. 214, 429 S.E.2d 496 (1992) we held: "A per curiam opinion that appears to deviate from generally accepted rules of law is not binding on the circuit courts, and should be relied upon only with great caution."

Fourth Circuit has best explained the standard of review:

A motion for a new trial is governed by a different standard from a directed verdict motion.... Under Rule 59 of the Federal Rules of Civil Procedure, a trial judge may weigh the evidence and consider the credibility of the witnesses and, if he finds the verdict is against the clear weight of the evidence, is based on false evidence or will result in a miscarriage of justice, he must set aside the verdict, even if supported by substantial evidence, and grant a new trial.

*Poynter v. Ratcliff*, 874 F.2d 219, 223 (4th Cir.1989) (citations omitted).

■ Therefore, to the extent that we have drifted in the past from the proper standard of review to be accorded to a trial judge's order which vacated the jury verdict and awarded a new trial, we clarify and hereafter emphasize that the role of the appellate court in reviewing a trial judge's determination that a new trial should be granted is very limited. Accordingly, we hold that a motion for a new trial is governed by a different standard than a motion for a directed verdict.[4] When a trial judge vacates a jury verdict and awards a new trial pursuant to Rule 59 of the *West Virginia Rules of Civil Procedure* the trial judge has the authority to weigh the evidence and consider the credibility of the witnesses. If the trial judge finds the verdict is against the clear weight of the evidence, is based on false evidence or will result in a miscarriage of justice, the trial judge may set aside the verdict, even if supported by substantial evidence, and grant a new trial. A trial judge's decision to award a new trial is not subject to appellate review unless the trial judge abuses his or her discretion.

■ In light of these principles, did the trial judge abuse his discretion when he awarded a new trial? The trial judge's order indicates that he evaluated the evidence and credibility of the witnesses when making his decision. For example, the trial judge stated that, not only did some of the appellants stipulate that their products were in the appellees' buildings, but also "there was more than substantial evidence that all [appellants] had products in one or more of the subject buildings." As we stated previously, a trial judge, unlike this Court, is in a unique position to evaluate the evidence and determine whether or not the evidence indicates that the appellants' products were in the building. Therefore, even though it may appear that the evidence was controverted as to whether or not the appellants' products were located in the appellees' buildings, we do not find the trial judge abused his discretion when he set aside the verdict and granted a new trial.

Additionally, the trial judge determined that the verdict was manifestly inadequate because there was "an abundance of evidence on the cost of maintenance, removal, and/or repair relating to the products." As we stated previously, the jury awarded no damages to the appellees. The appellants argue that

4. A directed verdict is a final judgment. Therefore, our standard of review is different for a directed verdict than for an order awarding a new trial:

' " 'Upon a motion to direct a verdict for the defendant, every reasonable and legitimate inference fairly arising from the testimony, when considered in its entirety, must be indulged in favorably to plaintiff; and the court must assume as true those facts which the jury may properly find under the evidence. Syllabus, *Nichols v. Raleigh–Wyoming Coal Co.*, 112 W.Va. 85 [, 163 S.E. 767 (1932)].' " Point 1, Syllabus, *Jenkins v. Chatterton*, 143 W.Va. 250 [, 100 S.E.2d 808] (1957).' Syllabus Point 1, *Jividen v. Legg*, 161 W.Va. 769, 245 S.E.2d 835 (1978).

Syl. pt. 1, *Cale v. Napier*, 186 W.Va. 244, 412 S.E.2d 242 (1991).

Similarly, a judgment notwithstanding a verdict is a final judgment which, therefore, warrants a different standard of review than that for a new trial:

In reviewing a trial court's ruling on a motion for a judgment notwithstanding the verdict, it is not the task of the appellate court reviewing facts to determine how it would have ruled on the evidence presented. Its task is to determine whether the evidence was such that a reasonable trier of fact might have reached the decision below. Thus, in ruling on a motion for a judgment notwithstanding the verdict, the evidence must be viewed in the light most favorable to the nonmoving party. If on review, the evidence is shown to be legally insufficient to sustain the verdict, it is the obligation of this Court to reverse the circuit court and to order judgment for the appellant.

Syl. pt. 1, *Mildred L.M. v. John O.F.*, 192 W.Va. 345, 452 S.E.2d 436 (1994).

they presented evidence that there would be no harm from their asbestos-containing products in the future.

A similar argument was made in *City of Greenville v. W.R. Grace & Co.*, 827 F.2d 975 (4th Cir.1987). In *Greenville*, the Court of Appeals of the Fourth Circuit affirmed the lower court's judgment which awarded compensatory and punitive damages to the City of Greenville for the presence of an asbestos-containing product in the city hall. The defendant, W.R. Grace & Company, argued that it was error for the jury to rely on the National Emission Standards for Hazardous Air Pollutants ["NESHAPS"] because there was no evidence that Greenville actually planned to renovate or demolish the city hall in the future; therefore, there would be no harm to the City of Greenville. The Fourth Circuit stated:

> This strikes us as a specious argument. It is obvious that the city hall will not last forever. It will have to be renovated or demolished at some time in the future, and when that day arrives, Greenville will be required to remove the [asbestos-containing product] from the building, if it has not already done so.

*Id.* at 982. *Cf. Beavercreek Local Schools v. Basic, Inc.*, 71 Ohio App.3d 669, 595 N.E.2d 360, 368 (1991) ("We agree ... that the jury's failure to award more than the cost of maintaining the asbestos is inexplicable in view of the uncontroverted testimony that Beavercreek [the plaintiff] would be faced with the necessity of removing the asbestos at the end of the life of the buildings[.]") In the case before us, the trial judge, in its unique role of being able to evaluate the evidence, could have found that the jury's failure to award any damages was "manifestly inadequate."

Lastly, the trial judge noted that "it appears to the Court that either the jury was not clearly instructed by the Court, or that the jury totally mis-comprehended the evidence." We agree with the trial judge. Our reading of the record revealed that there was confusion in the jury instructions as to whether the jury was to determine if the product was located in the building and if so, the amount of damages; or whether the jury

was to also determine whether or not the product caused damage.

Indeed, we grant more deference to the trial judge who awards a new trial than we do to a trial judge who denies a new trial because "there is, ordinarily, lack of finality in the action of setting aside a verdict and granting a new trial." *Browning, supra,* 126 W.Va. at 203, 27 S.E.2d at 485. Accordingly, based on our discussion above, we hold that it was not an abuse of discretion for the trial judge to vacate the jury verdict and award a new trial.

### III.

The appellants raise additional issues for this Court to address in the event that we do not reinstate the jury verdict. Specifically, the appellants raise issues regarding (1) whether a statute of limitations is applicable to the State; (2) whether the trial judge could find as a matter of law that the asbestos-containing products of the appellants are defective and, therefore, direct a verdict on liability against the appellants; (3) whether the trial judge should have disqualified himself from the trial; (4) whether the trial judge erred in striking the defense of assumption of risk; and (5) whether the trial judge erred in determining that appellant W.R. Grace & Co. is responsible for its predecessor's liabilities.

### A.

The first additional issue, which could be dispositive of the case, is whether a statute of limitations runs against the State in an asbestos case. The appellants argue that the appellees' claim is barred pursuant to *W.Va. Code,* 55-2-12 [1959] which states that a tort claim must be brought "[w]ithin two years next after the right to bring the same shall have accrued[.]" The trial judge rejected this argument and applied the common law doctrine of *nullum tempus occurrit regi* ("time does not run against the King") and found that the statute of limitations does not run against the State in spite of the fact that *W.Va. Code,* 55-2-19 [1923] states: "Every statute of limitation, unless otherwise expressly provided, shall apply to the State."

*W.Va.Code,* 2–1–1 [1923] provides, in relevant part: "The common law of England, so far as it is not repugnant to the principles of the constitution of this state, shall continue in force within the same, except in those respects wherein it was ... altered by the Legislature of this state." Furthermore, in the syllabus of *Perry v. Twentieth Street Bank,* 157 W.Va. 963, 206 S.E.2d 421 (1974), this Court stated "[b]y virtue of the authority of Article VIII, Section 21 of the Constitution of West Virginia and of Code, 1931, 2–1–1 it is within the province of the Legislature to enact statutes which abrogate the common law." The legislature had the authority to enact *W.Va.Code,* 55–2–19 [1923]. Therefore, we conclude that *W.Va.Code,* 55–2–19 [1923] abrogates the common law doctrine of *nullum tempus occurrit regi* thereby making statutes of limitations applicable to the State.

Because the trial judge applied the doctrine of *nullum tempus occurrit regi* against the appellees, the trial judge did not reach the issues of whether the two-year statute of limitations found in *W.Va.Code,* 55–2–12 [1959] barred the appellees' claim or whether the discovery rule applies.[5] Therefore, we decline to address these latter two issues on appeal. *See* syl. pt. 1, *Shackleford v. Catlett,* 161 W.Va. 568, 244 S.E.2d 327 (1978) (" 'In the exercise of its appellate jurisdiction, this Court will not decide nonjurisdictional questions which were not considered and decided by the court from which the appeal has been taken.' Syllabus Point 1, *Mowery v. Hitt,* 155 W.Va. 103 [, 181 S.E.2d 334] (1971)").

### B.

Second, we address whether the trial judge could find as a matter of law that the asbestos-containing products of the appellants are defective and, therefore, direct a verdict on liability against the appellants. The appellants argue that there was evidence which indicated that the products are not defective. Therefore, the appellants conclude that the issue of whether the asbestos-containing

products are defective should have gone to the jury. Furthermore, the appellants contend that liability could not have been directed since the jury had to determine whether the products caused damage. The resolution of this issue is important in determining whether the trial judge may find that the asbestos-containing products are defective as a matter of law and direct liability when this case is remanded for further proceedings, including a new trial.

The record before us is unclear as to how the trial judge came to his determination. It appears the trial judge took judicial notice that asbestos-containing products are defective as a matter of law. If this is the case, we assert that "[w]hile courts are permitted to take judicial notice of certain facts, it is well settled that a trial judge is not permitted to base a finding upon facts which are merely matters of his personal knowledge as distinguished from proof of such facts." *Boggs v. Settle,* 150 W.Va. 330, 338, 145 S.E.2d 446, 451 (1965). *See also* 1 Franklin D. Cleckley, *Handbook on Evidence for West Virginia Lawyers,* § 2–1(G) (3rd ed. 1994) ("A judge may not take judicial notice of adjudicative facts that are open to reasonable dispute, even if the judge is personally convinced of the correctness of a particular conclusion.")

Furthermore, the appellants contend that the trial judge applied the wrong standard when he stated in the September 14, 1993 order that the asbestos-containing products are defective as a matter of law because they are inherently dangerous. In *Morningstar v. Black & Decker Manufacturing Co.,* 162 W.Va. 857, 888, 253 S.E.2d 666, 683 (1979), this Court concluded that "in this jurisdiction ... the general test for establishing strict liability in tort is whether the involved product is defective in the sense that it is not reasonably safe for its intended use." In the present case, it is unclear what standard the trial judge applied to determine when a product is defective.

---

5. The appellants correctly assert that this Court has adopted the discovery rule in product liability claims for personal injuries. *See Hickman v.*

*Grover,* 178 W.Va. 249, 252, 358 S.E.2d 810, 813 (1987).

The trial judge appears to have relied upon his own knowledge when he determined that asbestos-containing products are defective as a matter of law. We emphasize that if the trial judge makes the same decision on remand with regard to the products being defective as a matter of law, then the trial judge must clearly indicate on the record how he came to that conclusion.

■ In this respect, a trial judge may take an issue from the jury if there are no questions of fact to be decided by the jury, but the trial judge may not remove a question of fact from the jury. 88 C.J.S. *Trial* § 208(b) (1955). This Court has stated:

the most fundamental rule of our system of jurisprudence is that questions of fact are to be determined by a jury and questions of law by a court.... [I]t is just as well established in our law that where there is no evidence to support a verdict, or where it is against the plain preponderance of conflicting evidence, or the governing facts are not in dispute so that reasonable minds could draw but one conclusion therefrom, the questions ... are for judicial determination as a matter of law.

*Fitzwater v. Spangler,* 150 W.Va. 474, 478, 147 S.E.2d 294, 296 (1966) (*citing Petros v. Kellas,* 146 W.Va. 619, 122 S.E.2d 177 (1961) which held in syllabus point 4: " 'When the material facts are undisputed and only one inference may be drawn from them by reasonable minds the questions of negligence and contributory negligence are questions of law for the court.' Point 3, syllabus, *Graham v. Crist,* 146 W.Va. 156 [, 118 S.E.2d 640 (1961) ]." *citing also Wood v. Shrewsbury,* 117 W.Va. 569, 186 S.E. 294 (1936).

■ Furthermore, our review of the record indicates it is not clear as to whether or not the trial judge directed a verdict on liability, although the order to which we refer previously in this opinion states "[t]he Court DIRECTED LIABILITY as a matter of law[.]" We acknowledge that a trial judge may direct a verdict:

'Where the evidence given on behalf of the defendant is clearly insufficient to support a verdict for him so that such verdict, if returned by a jury, must be set aside, and the evidence of the plaintiff is clear and convincing, it is the duty of the trial court, when so requested, to direct a verdict for the plaintiff.' Point 5 Syllabus, *Sommerville v. The Pennsylvania Railroad Co.,* 151 W.Va. 709 [, 155 S.E.2d 865 (1967) ].

Syl. pt. 4, *Jones, Inc. v. W.A. Wiedebusch Plumbing and Heating Co.,* 157 W.Va. 257, 201 S.E.2d 248 (1973).

In the case now before us, however, the jury instructions are not clear as to whether liability was directed. At one point, the jury instructions indicate that, although the asbestos-containing products are defective as a matter of law, the jury still must determine whether the products caused damage and, if so, what the amount of damages are. At another point, the jury instructions indicate that if the jury finds that the product is located in the appellants' buildings, then the jury must award damages. These conflicting instructions need to be resolved.

In *Morningstar, supra,* this Court explained that in a product liability case, the initial inquiry is whether the product is defective and, if so, did it cause damage. The next inquiry is the amount of monetary damages. Therefore, on remand, if the trial judge directs a verdict on liability, he must clearly explain in the record the reasons for his decision.

## C.

Third, we address whether the trial judge erred in refusing to disqualify himself after announcing, prior to the presentation of the appellants' case, that in-place asbestos-containing products are defective as a matter of law and as a matter of fact. The appellants argue that the trial judge violated Canon 3C of the *West Virginia Judicial Code of Ethics* which states, in relevant part: "A judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned[.]" [6]

6. Currently, the comparable section can be found in Canon 3E(1) of the *West Virginia Code of Judicial Conduct.* The *West Virginia Code of* *Judicial Conduct* became effective on January 1, 1993.

■ Although the appellants raise this issue as an assignment of error, this issue is more appropriately disposed of pursuant to Rule XVII of the *West Virginia Trial Court Rules for Trials of Record* (Rule XVII outlines the proper procedure for disqualifying a judge). Therefore, we decline to address this issue.

However, we note that our review of the record indicates that there were statements made by the trial judge which may have been intemperate. Although a trial judge need not be muzzled, we caution the trial judge to exercise more restraint in making comments with regard to the merits or lack of merits of a party's position without proper support. Obviously, impartiality in a judge is of the utmost importance to instill confidence in the judiciary.

### D.

■ Fourth, we address whether the trial judge erred in striking the defense of assumption of risk. At the outset, we note:

The defense of assumption of risk is available against a plaintiff in a product liability case where it is shown that the plaintiff had actual knowledge of the defective or dangerous condition, fully appreciated the risks involved, and continued to use the product. However, the plaintiff is not barred from recovery unless his degree of fault under assumption of risk equals or exceeds the combined fault of the other parties to the accident.

Syl. pt. 3, *King v. Kayak Manufacturing Corporation*, 182 W.Va. 276, 387 S.E.2d 511 (1989). Additionally, we have stated:

' "Where [in a trial by jury] there is competent evidence tending to support a pertinent theory in the case, it is the duty of the trial court to give an instruction presenting such theory when requested to do so. *McAllister v. Weirton Hospital Co.*, 173 W.Va. 75, 81, 312 S.E.2d 738, 744 (1983) (citations omitted)." Syl. pt. 2, *Brammer v. Taylor*, 175 W.Va. 728, 338 S.E.2d 207 (1985).' Syllabus Point 2, *Ventura v. Winegardner*, 178 W.Va. 82, 357 S.E.2d 764 (1987).

Syl. pt. 6, *King, supra.*

The appellants state the evidence indicates that as early as 1946 the State issued a respiratory equipment bulletin designed to protect West Virginia workers from exposure to asbestos and silica. The record discloses the bulletin lists approved respiratory devices to protect against the inhalation of asbestosis. However, this does not in and of itself indicate the State had actual knowledge of a dangerous or defective condition.

■ The appellants also assert that in 1951 the State adopted regulations regarding threshold limits of exposure to asbestos. However, the appellants do not indicate where in the record it states the appellees had actual knowledge that the asbestos levels in the state buildings were above the threshold limits. Accordingly, we conclude, based upon the above information, that the trial judge could determine that the evidence was not sufficient to support an instruction on assumption of risk. We find no error in the trial judge's ruling.

### E.

Finally, we address whether the trial judge erred in refusing to grant a directed verdict or to charge the jury on the issue of successor liability. W.R. Grace & Co. (hereinafter "Grace") is the only appellant raising this issue.

■ In syllabus points 2 and 3 of *Davis v. Celotex Corporation*, 187 W.Va. 566, 420 S.E.2d 557 (1992) this Court held:

2. At common law, the purchaser of all the assets of a corporation was not liable for the debts or liabilities of the corporation purchased. This rule has since been tempered by a number of exceptions and statutory provisions.

3. A successor corporation can be liable for the debts and obligations of a predecessor corporation if there was an express or implied assumption of liability, if the transaction was fraudulent, or if some element of the transaction was not made in good faith. Successor liability will also attach in a consolidation or merger under W.Va.

Code, 31–1–37(a)(5) (1974). Finally, such liability will also result where the successor corporation is a mere continuation or reincarnation of its predecessor.

With this in mind, we address Grace's contentions.

■ Grace purchased certain assets of the Zonolite Company on April 10, 1963, pursuant to an Agreement and Plan of Reorganization. Grace contends that under the agreement it assumed only the debts and liabilities of Zonolite which existed at the closing of the purchase of Zonolite. Therefore, it is not responsible for claims caused by asbestos-containing materials manufactured and sold by Zonolite prior to the closing of the purchase of Zonolite.

■ However, as we stated above, a company may be liable if it impliedly assumes liability or is a mere continuation or reincarnation of its predecessor. The appellees assert that Grace acquired all of Zonolite's assets and continued to manufacture the same products as Zonolite. Therefore, the trial judge could conclude that Grace impliedly assumed responsibility or that it is a mere continuation or reincarnation of its predecessor.[7] Accordingly, we cannot conclude that the trial judge erred on this issue.[8]

## IV.

Accordingly, we affirm the September 14, 1993 order of the Circuit Court of Monongalia County to the extent the trial judge vacated the jury verdict and awarded a new trial. The case will be remanded and further proceedings will be held in accordance with the principles set forth in this opinion.

Affirmed, in part, reversed, in part, and remanded.

BROTHERTON, C.J., and MILLER, Retired J., did not participate.

CLECKLEY, J., concurs and files a concurring opinion.

CLECKLEY, Justice, concurring:

(Filed Jan. 6, 1995)

I am pleased to concur in Justice McHugh's fine opinion. I particularly agree with his analysis regarding the broad discretion and the scope of authority of the trial court to set aside a jury's verdict as being against the weight of the evidence. I write separately, however, just to make explicit what is implicit in the analysis of the opinion: that a trial court in West Virginia has authority in determining a motion for a new trial under Rule 59 of the West Virginia Rules of Civil Procedure to weigh the persuasive quality of the evidence and that our prior cases to the contrary are overruled.[1] Several of our prior cases, such as *Addair v. Majestic Petroleum Co., Inc.*, 160 W.Va. 105, 232 S.E.2d 821 (1977), held that the trial court's authority to review a jury's verdict was the same as that of an appellate court. This case sounds the death knell for *Addair* and its progeny. Indeed, several of *Addair*'s express or implicit declarations would not stand the test of time and its holding limiting the scope of the reviewing authority of the trial court to only that of an appellate court had long been a rule searching for a ratio-

7. Similarly, other courts have found that Grace is responsible for the obligations of Zonolite. *See Harashe v. Flintkote Co.*, 848 S.W.2d 506, 509 (Mo.Ct.App.1993) (the court held that "[w]hile the [Grace–Zonolite Agreement] was delineated as a reorganization through a purchase of assets it contained all the elements of a *de facto* merger.") and *T.H.S. Northstar Assocs. v. W.R. Grace & Co.–Conn.*, 840 F.Supp. 676, 679 (D.Minn. 1993) (The court found that the elements of a *de facto* merger were present since Grace assumed the obligations of Zonolite, the Zonolite shareholders became Grace stockholders, and Grace paid for Zonolite assets solely with shares of its own stock rather than with cash.) *But see East Prairie R–2 School District v. U.S. Gypsum Co.*, 813 F.Supp. 1396 (E.D.Mo.1993) (Grace held not to be responsible for its predecessor's (Zonolite) liabilities.)

8. The appellants also raised the following issues: whether a new trial should be granted with respect to buildings for which product identification was not conceded and whether a new trial should be granted on punitive damages. However, because of our holding in part II, *supra*, there is no need to address these issues.

1. We merely are upholding the right of a trial court to grant a new trial when it believes that substantial justice has not been done on the theory that it is an exercise of the trial court's inherent power.

nale. Today's decision puts a long overdue end to the fruitless search. By broadening the authority of trial courts and limiting that of the appellate court, we strike a decent note for judicial restraint and judicial economy.[2]

As suggested above, our prior cases indicated that the test for granting a new trial approximated the test for a directed verdict.[3] Although today's decision does not go so far to state that the trial court may order a new trial where there is any evidence which would support a judgment in favor of the nonmoving party,[4] any notion that the tests for a new trial and for a directed verdict are equated is, of course, laid to rest. What we have done is take an intermediate position which I will now attempt to summarize.

The decision to grant or deny a new trial rests within the sound discretion of the trial court, and we review this decision for a clear abuse of discretion. *See Browning–Ferris Industries of Vermont, Inc. v. Kelco Disposal, Inc.,* 492 U.S. 257, 109 S.Ct. 2909, 106 L.Ed.2d 219 (1989). Absent a clear abuse of discretion, we will not disturb this decision; indeed, our position is the same as the federal test that the trial court's decision " 'is not reviewable upon appeal, save in the most exceptional circumstances[.]' " *Lindner v. Durham Hosiery Mills, Inc.,* 761 F.2d 162, 168 (4th Cir.1985), *quoting Aetna Cas. &*

*Sur. Co. v. Yeatts,* 122 F.2d 350, 354 (4th Cir.1941).[5]

Justice McHugh correctly states that this power of the trial court should be exercised sparingly. Even if the trial court disagrees with the verdict, it should accept the jury's findings on credibility matters unless the verdict is clearly against the manifest weight of the evidence where the jury acted under some mistake or under some improper motive, bias, or feelings. The most important feature of the rule we adopt today is that enforcement of these limitations of the trial court's authority is committed largely to the self-restraint of the trial court and reversals on appeal are to be rare. Greater latitude should be allowed a trial court in granting a new trial than in denying a new trial.[6]

This decision is committed to the discretion of the trial court because it "is in a position to see and hear the witnesses and is able to view the case from a perspective that an appellate court can never match." *Weil v. Seltzer,* 873 F.2d 1453, 1457 (D.C.Cir.1989). Given the trial court's intimate familiarity with the proceedings, the trial court "may weigh evidence and assess credibility in ruling on the motion for a new trial." *Wilhelm v. Blue Bell, Inc.,* 773 F.2d 1429, 1433 (4th Cir.1985), *cert. denied,* 475 U.S. 1016, 106 S.Ct. 1199, 89 L.Ed.2d 313 (1986). There are many critical events that take place during a

---

**2.** Clearly, granting a trial court broad latitude in granting or denying motions for a new trial is consistent with the principles of judicial economy. Here, the trial court, before losing jurisdiction of a case, is permitted to correct errors that it or the jury might have made during the course of the trial. Furthermore, giving the trial court this power to achieve justice may encourage litigants more forcefully to pursue the issues below rather than in a full blown and costly appeal.

**3.** Some jurists have suggested there is some similarity between these two tests and the difference is one of degree. There can be little disagreement that they differ substantially to the extent of control over jury verdicts exercised by the trial court. *See* Philip A. Trautman, *Motions Testing the Sufficiency of Evidence,* 42 Wash.L.Rev. 787 (1967).

**4.** Under this theory, a trial court becomes a "thirteenth juror" upon hearing a motion for a new trial. The trial court weighs the evidence

independently to determine whether there is sufficient evidence to support the verdict.

**5.** The federal test is summarized in the famous statement of Judge Parker in *Aetna Casualty & Surety Co. v. Yeatts,* 122 F.2d at 352:

"On such a motion it is the duty of the judge to set aside the verdict and grant a new trial, if he is of opinion that the verdict is against the clear weight of the evidence, or is based upon evidence which is false, or will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict."

*See also Allied Chemical Corp. v. Daiflon, Inc.,* 449 U.S. 33, 36, 101 S.Ct. 188, 190, 66 L.Ed.2d 193, 197 (1980) (order granting new trial is not appealable and "rarely, if ever, will justify the issuance of a writ of mandamus").

**6.** The mere fact there is little discussion of the merits of the evidence in the trial court's granting or denial of a motion for a new trial is not grounds for reversal. *See Ellis v. International Playtex, Inc.,* 745 F.2d 292 (4th Cir.1984).

trial that cannot be reduced to record, which may affect the mind of the judge as well as the jury in forming the opinion as to the weight of the evidence and the character and credibility of the witnesses. These considerations can and should not be ignored in determining whether a new trial was properly granted. The Eleventh Circuit has observed that these principles are particularly apt even in cases where the motion is denied. *See Blu–J, Inc. v. Kemper C.P.A. Group,* 916 F.2d 637 (11th Cir.1990). Thus, in future cases, it is with this circumscribed scope of appellate review that we should review the granting or denial of a new trial.