# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**Jason Miller and Myriah Miller,**
**Plaintiffs Below, Petitioners**

**vs.) No. 20-0557** (Mineral County 18-C-18)

**Fountainhead Homeowners Association, Inc.,**
**Defendant Below, Respondent**

# MEMORANDUM DECISION

Petitioners Jason Miller and Myriah Miller, by counsel Harley O. Staggers, Jr. and H. Orrin Staggers, III, appeal the November 7, 2019, order of the Circuit Court of Mineral County that denied petitioners' motion for a new trial. Respondent Fountainhead Homeowners Association, Inc., by counsel Charles F. Johns and Stephenee R. Gandee, responds in support of the circuit court's order. Petitioners filed a reply.

The Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Petitioners and their three children reside in the Village of Fountainhead in Mineral County, West Virginia, and, as such, are members of the "Fountainhead Homeowner's Association, Inc." (the "HOA"). Under the HOA's bylaws, members are required to pay a monthly sewage disposal fee. In return, the HOA is required to install, maintain, and operate a main sewage disposal pipeline to the property line of each HOA member's property. Each homeowner is responsible for the sewage disposal line from the property line to the member's home.

On July 6, 2017, petitioners notified the president of the HOA, Robert Powell, that their basement was flooded with raw sewage. At the time, petitioners' youngest child was just four months old, and Mrs. Miller was suffering from postpartum depression. Mr. Powell contacted M&W Septic Tank Pumping, LLC, ("M&W") to clear out the manhole at petitioners' residence. Thereafter, M&W discovered that the backup occurred due to tree root growth through a section of sewage pipeline maintained by the HOA. Accordingly, the HOA paid to clean out petitioners' manhole and for the subsequent inspection and replacement of the damaged pipeline for which the HOA paid $3,932.39.

1

On April 4, 2018, petitioners sued the HOA, alleging that their basement flooded with sewage as a direct result of the HOA's failure to maintain and operate the Village of Fountainhead's main sewage disposal line. The HOA contends that petitioners' complaint did not set forth specific causes of action but admits that petitioners alleged that the HOA's intentional failure to maintain the sewage pipeline was "willful, wanton, and taken with complete disregard." Petitioners sought economic, emotional, and punitive damages.

Petitioners' two-day jury trial commenced on August 27, 2019. During their case-in-chief, both petitioners testified, as did the HOA's president, Robert Powell. Witness David Redman testified that to prevent a similar situation from happening again, the Village of Fountainhead would have to clear-cut all trees over and within twenty or thirty feet of the Village of Fountainhead's sewer lines. Mrs. Miller's mother, Susan Tasker, testified as follows regarding Mrs. Miller's response to the sewage in the basement:

> Well, ladies that have children can appreciate this, that she is postpartum, so she was emotional anyway. The hormones flying all over the place, so she was very distraught. I mean, all of this, in addition to finding raw human sewage in your basement.

> She was concerned about keepsakes that were down there. It's more like a[] lower floor for them versus like a basement that's just a utility basement. They actually use it down there. And she was rather distraught.

As Mrs. Tasker finished her testimony, the trial court engaged her in a brief conversation:

The circuit court: I have a question, ma'am.

Mrs. Tasker: Yes, sir.

The circuit court: You talk about [Mrs. Miller] having postpartum.

Mrs. Tasker: Yes sir.

The circuit court: My wife had our last child 19 years ago. Does it ever go away?

Mrs. Tasker: Well, I'm not sure.

The circuit court: Thank you, Mrs. Tasker.

Petitioners concluded their case prior to the end of the first day of trial and, thereafter, moved for judgment as a matter of law. The circuit court denied that motion. Respondent asked for a continuance given that it had scheduled its expert for the second day of trial. However, on the second day of trial, respondent's expert did not appear. Therefore, respondent told the court that a member of its Board of Directors, Mike Kesecker, was available to testify in place of its

expert. Petitioners objected to Mr. Kesecker's testimony, but the circuit court overruled that objection.

Mr. Kesecker testified that he was one of the HOA's officers and that he had a contract with the HOA to manage the development's wastewater ponds. Mr. Kesecker claimed that clear-cutting all the trees over and around the HOA's sewage lines was "not feasible" and would be "financially impossible." Following this testimony, respondent rested its case.

Thereafter, the jury returned a verdict in petitioners' favor, finding that the HOA breached its duty to maintain its sewer pipeline to petitioners' property. The jury awarded petitioners: (1) $1,150.00 in lost income; (2) $500.00 in property damages; (3) $100.00 for inconvenience; and (4) $100.00 for emotional damages. Petitioners were also awarded $181.50 in prejudgment interest.

On November 18, 2019, petitioners filed a motion for a new trial on damages based on the circuit judge's rhetorical question to Mrs. Tasker regarding his own wife and post-partum depression. The HOA filed a response in opposition. By order entered on June 30, 2020, the circuit court denied petitioner's motion for a new trial. The judge acknowledged that he briefly joked with Mrs. Tasker about his own wife; however, the court ruled that this one brief attempt at humor did not create an impression with the jurors that he was partial to either side. The court also highlighted that the jurors found in petitioners' favor and awarded them damages. Petitioners now appeal.

> "The standard under which we review the trial court's refusal to grant a new trial is stated in *Tennant v. Marion Health Care Foundation*, 194 W.Va. 97, 459 S.E.2d 374 (1995): 'We review the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard.'"

*Love v. Georgia-Pac. Corp.*, 209 W. Va. 515, 518, 550 S.E.2d 51, 54 (2001).

On appeal, petitioners first argue that the trial court violated Rule 614(b) of the West Virginia Rules of Evidence by joking with Mrs. Tasker about his own wife and post-partum depression. Rule 614(b) provides as follows: "**Examining.** The court may examine a witness regardless of who calls the witness. In jury trials the court's examination shall be impartial so as not to prejudice the parties." Petitioners contend that the jury may have heard the court's question to Mrs. Tasker not as a joke, but as skepticism of Mrs. Miller's emotional suffering from post-partum depression and, therefore, the joke prejudiced them with regard to emotional damages.

Rule of Evidence 614(c) provides that "[a] party may object outside the presence of the jury to the court's calling or examining a witness." Here, petitioner did not object to the court's question to Mrs. Tasker or move to strike it; thus, they have waived any objection to it. "The raise or waive rule is designed 'to prevent a party from obtaining an unfair advantage by failing to give the trial court an opportunity to rule on the objection and thereby correct potential error.' *Wimer v. Hinkle*, 180 W.Va. 660, 663, 379 S.E.2d 383, 386 (1989)." *PNGI Charles Town Gaming, LLC v. Reynolds*, 229 W. Va. 123, 134, 727 S.E.2d 799, 810 (2011).

However, even if petitioners had not waived this assignment of error, they fail to demonstrate plain error. "To trigger application of the 'plain error' doctrine, there must be (1) an error; (2) that is plain; (3) that affects substantial rights' and (4) seriously affects the fairness, integrity, or public reputation of the judicial proceedings." Syl. Pt. 7, *State v. Miller*, 194 W. Va. 3, 459 S.E.2d 114 (1995). Petitioners cannot meet this standard because they fail to demonstrate that the court's lone comment affected a substantial right or the fairness, integrity, or public reputation of the judicial proceeding. To the contrary, petitioners prevailed in their action and were awarded damages, including emotional damages.

Petitioners also fail to demonstrate that the trial court's comment was partial to respondent.

> Where a . . . trial court's questioning of witnesses and comments prejudiced the defendant's right to present evidence and jeopardized the impartiality of the jury, this Court upon review will evaluate the entire record to determine whether the conduct of the trial has been such that jurors have been impressed with the trial judge's partiality to one side to the point that the judge's partiality became a factor in the determination of the jury so that the defendant did not receive a fair trial.

Syl. Pt. 3, in part, *State v. Thompson*, 220 W. Va. 398, 647 S.E.2d 834 (2007). In *Thompson*, the Court found that the trial court abandoned its role of impartiality and neutrality by propounding over 120 questions to various witnesses and, thereby, showed its bias against the defendant. Conversely, in the instant case, we cannot say that the court's brief attempt at humor regarding his own wife rose to a level of showing partiality in favor of respondent.

As for petitioners' claim that the jury limited their emotional damages due to the judge's comment, petitioners present no evidence in support. As noted above, the jury awarded petitioners emotional damages in the amount of $100. That determination was within the jury's province and should not be disturbed on appeal unless it is found to be against the clear weight of the evidence, based on false evidence, or result in a miscarriage of justice. *See* Syl. Pt. 3, *In re State of W. Va. Pub. Bldg. Asbestos Litig.*, 193 W. Va. 119, 454 S.E.2d 413 (1994).

In petitioners' second and final assignment of error, they argue that the trial court erred in allowing respondent's witness, Mike Kesecker, to testify as a member of the HOA's board of directors. Petitioners aver that to serve on the HOA's board of directors, a person must own property within the Village of Fountainhead and that a search of Mineral County's real estate records does not show that Mr. Kesecker owns property in the Village of Fountainhead. Petitioners further aver that the sole purpose of Mr. Kesecker's testimony was to elicit sympathy from the jury given that he testified, in essence, that the HOA could not afford to maintain the subdivision's sewer lines by clear-cutting every tree over or near the HOA's sewer lines. Finally, petitioners argue that what respondent could afford to pay in damages was irrelevant to the issues in this case and that respondent's lack of candor regarding Mr. Kesecker involved a material representation that fooled the trial court and negatively affected their award of damages.

We disagree and find that the circuit court properly allowed Mr. Kesecker's testimony. At the trial in this matter, respondent identified Mr. Kesecker as a member/officer of the HOA's board of directors and, therefore, was a party to the lawsuit as well as a witness. Petitioners argue that

4

respondent's bylaws do not allow non-property owners to be officers and that Mr. Kesecker does not own property in the Village of Fountainhead. However, whether respondent complied with its bylaws in electing Mr. Kesecker to be an officer of the HOA is not at issue in this case. Moreover, the focus of Mr. Kesecker's testimony was whether respondents' method of maintaining the HOA's sewage system was reasonable. Thus, there is no evidence that Mr. Kesecker's testimony was presented solely for the purpose of eliciting sympathy from the jury. "[T]he basic purpose of a trial in court is the ascertainment of truth with the aid of all testimony which may properly contribute to that purpose[.]" *Duling v. Bluefield Sanitarium, Inc.*, 149 W. Va. 567, 586, 142 S.E.2d 754, 766 (1965). Finally, because Mr. Kesecker's testimony went to the issue of liability, petitioners cannot rightfully assert that the outcome of the trial would have been different if Mr. Kesecker's testimony had been excluded given that the jury found in petitioners' favor on the issue of liability.

Accordingly, for the foregoing reasons, we find that the circuit court did not abuse its discretion in denying petitioners' motion for a new trial and, therefore, affirm the circuit court's November 7, 2019, order.

Affirmed.

**ISSUED:** October 29, 2021

**CONCURRED IN BY:**

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton