# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Connor Tyree,**
**Defendant Below, Petitioner**

**FILED**

**November 16, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs)  No.  17-1077** (Kanawha County 12-C-1783)

**Pamela Bell,**
**Plaintiff Below, Respondent**


## MEMORANDUM DECISION

Petitioner Connor Tyree, by counsel David A. Mohler and Joshua A. Johnson, appeals the November 6, 2017, order of the Circuit Court of Kanawha County that set aside a jury verdict in his favor and granted Respondent Pamela Bell's Rule 59 motion for a new trial on the issue of damages in this negligence action. Respondent, by counsel Robert B. Kuenzel, responds in support of the circuit court's order. Petitioner filed a reply.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On May 19, 2011, Connor Tyree's vehicle rear-ended Pamela Bell's pick-up truck on Corridor G in Kanawha County. The resulting police report found that Mr. Tyree was following too closely and failed to maintain control of his vehicle. Ms. Bell filed the underlying action on September 4, 2012. Mr. Tyree admitted liability prior to trial.

A trial on the issue of damages commenced on February 3, 2014. Ms. Bell testified that she was stopped at a red light when,

> [a]ll of a sudden, I got a big jolt in the back of [my] truck and my chest went into the steering wheel because where I'm short and it's a big truck, I had to drive close to the steering wheel. And my head went back and forward and I sort of blacked out.

Ms. Bell further testified that the accident buckled the bed of her pickup truck bed, which caused it to break off its frame. When Mr. Tyree asked if she was injured, she said, "I'm hurting in my neck and I think I need an ambulance." She tried to undo her seatbelt, but could not because she was "hurting too bad." She told the ambulance driver that her neck and right leg hurt. An ambulance transported her to a hospital where she had a CT scan, an MRI, and x-rays. At the hospital, she complained about pain "mostly in her lower back and in my leg and in my neck."

1

She followed up with nurse practitioner Kathy Hill. She did not initially complain about neck pain to Ms. Hill because she was "trying to take care of it [herself] with heat and ice at home, [but] then couldn't stand the pain anymore." Accordingly, she mentioned the neck pain to Ms. Hill, who ordered physical therapy. She participated in physical therapy three times a week for six months during which she was unable to engage in activities such as dog-walking, cooking, cleaning, going to church, and grocery shopping. By the end of six months of therapy, she regained the motion in her neck.

With regard to her past medical history, Ms. Bell testified that she received a five percent permanent disability award for an injury to her back in 1993. She further testified that, in 2003, she strained her back at work and eventually received social security disability for that injury. She also testified that she had received no physical therapy or chiropractic treatment for those injuries between 2005 and the date of the accident, May 19, 2011.

Ms. Bell presented the testimony of Ms. Hill, the nurse practitioner who treated her after the accident. Ms. Hill testified that Ms. Bell received a back and neck injury as a result of the accident and had six post-accident related appointments. During Ms. Bell's first post-accident appointment, Ms. Bell complained about back and leg pain, but not neck pain. During Ms. Bell's second appointment, on June 8, 2011, Ms. Hill noted Ms. Bell's neck was "decreased with flexion and extension." During Ms. Bell's third post-accident appointment, on July 8, 2011, Ms. Hill diagnosed "cervical strain" and noted that it was "a chronic but intermittent problem with an acute exacerbation . . . precipitated . . . [by] a motor vehicle accident." Ms. Hill prescribed physical therapy. At a fourth appointment on August 30, 2011, Ms. Hill found Ms. Bell's "symptoms had improved since her last visit," "physical therapy and treatments were helping," and Ms. Bell "had more good days than bad and could move her head a little." Ms. Hill further testified that the care she rendered to Ms. Bell during these six visits was reasonably related to the accident, that Ms. Bell's pre-existing injuries were worsened by the accident, and that the costs for Ms. Bell's care were reasonable and necessary. Under cross-examination, Ms. Hill testified that sprains, such a Ms. Bell's, do not always resolve within one or two months.

Ms. Bell also called physical therapist Tricia McClung who testified that she treated Ms. Bell for six months; the treatments included ultrasound, electrical stimulation, heat or ice, massages, and exercises normally rendered for cervical spine sprain-strain; that cervical strain is consistent with a car crash injury; that a simple sprain-strain does not always heal in one or two months; and that the care she rendered to Ms. Bell, and the cost of that care, were reasonable and necessary.

Throughout her case-in-chief, Ms. Bell presented evidence of her accident-related medical expenses that totaled $35,816.14. Of that total, $25,023.00 related to the cost of physical therapy. The remaining $10,793.14 was attributed to the cost of Ms. Bell's ambulance transport, emergency room treatment, scans, and x-rays on the day of the accident.

During his case-in-chief, Mr. Tyree called Jimmy Adams, M.D., a pain specialist, who examined Ms. Bell and her medical records at Mr. Tyree's request. Dr. Adams opined generally that symptoms of a strain or sprain show up between twenty-four hours and three days following an injury; sprains and strains resolve within a month or so, sometimes sooner; and symptoms of a

strain sprain are worst at their outset and improve thereafter. Dr. Adams then testified to a reasonable degree of medical probability as follows: Ms. Bell's scans and x-rays on the day of the accident showed no acute trauma, but did show degenerative changes. Ms. Bell did not complain of neck pain at her May 25, 2011, or June 8, 2011, medical appointments. Ms. Bell first complained of neck pain at her third medical appointment on July 27, 2011, more than two months after the accident. Ms. Bell began physical therapy for her neck pain on August 10, 2011, more than two and a half months after the accident. Dr. Adams further testified that Ms. Bell's diagnosis of neck or cervical strain sprain was reasonable; however, there was a lack of objective physical findings to substantiate Ms. Bell's continued neck pain, i.e., no muscle spasm, no temperature, no ropy texture, and no herniated disc. Dr. Adams then concluded that a short course of physical therapy such as three times a week for four weeks is reasonable for a cervical strain sprain; excessive physical therapy can aggravate symptoms; and the six months of physical therapy Ms. Bell received for her neck strain sprain was "exorbitant" and "excessive," but he "wouldn't quibble with one month of physical therapy."

Dr. Adams also testified that, during his physical examination of Ms. Bell, she showed extreme anxiety, and turned her neck in "a very interesting and unusual manner" in that she turned it only slightly from side to side. Dr. Adams further testified that when he touched Ms. Bell's low back "with the lightest touch, she displayed extreme pain." Dr. Adams called this response "allodynia" or displaying "pain out of proportion to the stimulus applied." Therefore, he believed "there may have been some . . . emotional component to her pain." Finally, Dr. Adams noted that, as he was testifying, he saw Ms. Bell fully turn her neck from side to side.

On cross-examination, Dr. Adams confirmed that, as a result of the accident, Ms. Bell "did sustain a cervical strain sprain" Dr. Adams also agreed that "the type of injury that [Ms. Bell] sustained is the type of injury that folks receive in rear end type crashes."

Following the close of all evidence, the circuit court instructed the jurors that they were "the sole judges of the 'credibility of the witnesses' and the 'weight of the evidence'" and that they "may give to the testimony of the witnesses such credit and weight as you believe it is entitled to receive." With regard to expert testimony, the court instructed that the jury "may disregard the opinion entirely, or give it such weight as you find it deserves." As to proximate cause, the court instructed:

> Accordingly, any award of damages in this action must be confined solely to those injuries, if any, which Plaintiff Pamela Bell suffered or which were made worse as a proximate result of Defendant [Connor Tyree's] conduct. You may not award damages for any injuries or conditions which the Plaintiff suffered prior to the incident in question except to the extent, and only to the extent, that any such prior injures or conditions were aggravated by the Defendant's conduct.

Finally, the court instructed that

> [Y]ou may not find for Plaintiff Pamela Bell in this case unless you believe that Defendant Connor Tyree's acts or omissions played a substantial part in bringing about or actually causing Plaintiff Pamela Bell's injuries. Negligence, no matter

of what it consists, cannot give rise to liability on the Defendant's part unless it is a proximate cause of the injury complained of. Accordingly, even if you believe that the Defendant was negligent, you may not find for the Plaintiff unless you also believe that the Defendant's negligence, if any, was a proximate cause of the Plaintiff Pamela Bell's injuries.

The verdict form posed the following question: "Do you find by a preponderance of evidence, more likely than not, that the plaintiff, Pamela Bell, was injured as a result of Connor Tyree's actions?" On February 5, 2014, the jury checked the box that provided "No (Pamela Bell was not Injured as a result Connor Tyree's actions)" and awarded no damages.

On March 10, 2014, Ms. Bell filed a motion for a new trial pursuant to Rule 59 of the Rules of Civil Procedure claiming that the jury's verdict was against the clear weight of the evidence. Ms. Bell argued that, at the very least, the jury should have awarded her the costs associated with her ambulance ride to the hospital, her subsequent scans and x-rays, and her pain and suffering on the day of the accident. Thereafter, Mr. Tyree filed a response. However, the case remained dormant until December 20, 2016, when Ms. Bell filed a renewed Rule 59 motion for a new trial based upon *Gunno v. McNair*, No. 15-0825, 2016 WL 6805006 (W.Va. Supreme Court, Nov. 17, 2016)(memorandum decision).

On November 6, 2017, the circuit court granted Ms. Bell's motion for a new trial on the issue of damages based upon the following findings and conclusions:

"A verdict which disregards the instructions of the court or constitutes a mistake and by virtue thereof does not cover the actual pecuniary loss properly proved will be set aside." [Syl. Pt. 3, *Richmond v. Campbell*, 148 W.Va. 595, 136 S.E.2d 877 (1964).] . . . .

Additionally, in [Syllabus Point 2 of] *Hall v. Groves*, 151 W.Va. 449, 153 S.E.2d 165 (1967) . . . , the [Court] held,

When in an action for the recovery of damages for personal injuries the verdict does not include as elements of damages all the items of hospital and medical expenses and loss of wages the amounts of which are definite and certain, are not controverted, and constitute a specific pecuniary loss by the plaintiff and which verdict does not award a substantial amount as compensation for permanent injuries to the plaintiff caused by the negligence of the defendant, and awards the plaintiff damages in an amount materially less than that to which the plaintiff is justly entitled, as shown by the evidence, such verdict is wholly inadequate in amount and will be set aside by this Court; and the case will be remanded to the trial court with directions that the plaintiff be granted a new trial upon the single issue of the quantum of damages which, under the evidence, he is justly entitled to recover.

4

. . . . In the case at hand, [Mr. Tyree] admitted liability and [Ms. Bell] proved at least some damages. The jury's verdict of $0.00 is an amount materially less than that which [Ms. Bell] proved she was entitled.

In *Gunno* . . . , the [Court] held that a jury's finding of negligence required a finding of damages. In *Gunno*, the jury found that the defendant was liable for the subject crash, but, despite the testimony presented, made no finding of damages.

At trial, [Mr. Tyree] admitted liability. Therefore, the only charge of the jury was to determine damages to [Ms. Bell]. [Ms. Bell] presented evidence of her injuries and damages. Although [Mr. Tyree's] expert contradicted the amount of physical therapy that was necessary from the resultant crash, [the expert] opined that the emergent care and 4-8 weeks of physical therapy was reasonable and necessary. Nonetheless, the jury returned a verdict indicating that [Ms. Bell] was not injured because of [Mr. Tyree's] admitted liability.

When reviewing the evidence submitted at trial, in the light most favorable to the non-moving party, the defendant, the Court finds that the jury's verdict disregarded the Court's instructions, disregarded the evidence in the case, and is contrary to the laws of the State of West Virginia, specifically the holdings in *Richmond* . . . , *Hall* . . . , and *Gunno*. . . .

Mr. Tyree now appeals the circuit court's order.

The standard of review applicable to an appeal from a motion to alter or amend a judgment, made pursuant to W. Va. R. Civ. P. 59(e), is the same standard that would apply to the underlying judgment upon which the motion is based and from which the appeal to this Court is filed.

Syl. Pt. 1, *Wickland v. Am. Travellers Life Ins. Co.*, 204 W.Va. 430, 513 S.E.2d 657 (1998).

In reviewing challenges to findings and rulings made by a circuit court, we apply a two-pronged deferential standard of review. We review the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a de novo review.

Syl. Pt. 3, *State v. Vance*, 207 W.Va. 640, 535 S.E.2d 484 (2000).

We have said,

[w]hen a trial judge vacates a jury verdict and awards a new trial pursuant to Rule 59 of the West Virginia Rules of Civil Procedure the trial judge has the authority

5

to weigh the evidence and consider the credibility of the witnesses. If the trial judge finds the verdict is against the clear weight of the evidence, is based on false evidence or will result in a miscarriage of justice, the trial judge may set aside the verdict, even if supported by substantial evidence, and grant a new trial.

Syl. Pt. 3, in part, *In re State Pub. Bldg. Asbestos Litig.*, 193 W.Va. 119, 454 S.E.2d 413 (1994).

On appeal,

"'[i]t takes a stronger case in an appellate court to reverse a judgment awarding a new trial than one denying it and giving judgment against the party claiming to have been aggrieved.' Point 1, Syllabus, *The Star Piano Co. v. Brockmeyer*, 78 W.Va. 780 [, 90 S.E. 338 (1916)]." Syl. pt. 2, *Young v. Duffield*, 152 W.Va. 283, 162 S.E.2d 285 (1968).

*In re State Pub. Bldg. Asbestos Litig.* at 121, 454 S.E.2d at 415, syl. pt 1. Moreover, "'[a]n appellate court is more disposed to affirm the action of a trial court in setting aside a verdict and granting a new trial than when such action results in a final judgment denying a new trial.' Syl. pt. 4, *Young v. Duffield*, 152 W.Va. 283, 162 S.E.2d 285 (1968)." *In re State Pub. Bldg. Asbestos Litig.* at 122, 454 S.E.2d. at 416, syl. pt. 2.

With these standards in mind, we turn to Mr. Tyree's four assignments of error. Mr. Tyree first argues that the circuit court abused its discretion and intruded upon the exclusive province of the jury when it rejected the jury's determination that Ms. Bell was not injured as a proximate cause of the accident.  Mr. Tyree highlights that "[i]n determining whether the verdict of a jury is supported by the evidence, every reasonable and legitimate inference, fairly arising from the evidence in favor of the party for whom the verdict was returned, must be considered, and those facts, which the jury might properly find under the evidence, must be assumed as true." Syl. Pt. 3, *Walker v. Monongahela Power Co.*, 147 W.Va. 825, 131 S.E.2d 736 (1963). Mr. Tyree claims that the circuit court failed to make "every reasonable and legitimate inference, fairly arising from the evidence" in his favor, as it was required to do.

We disagree and find that the circuit court did not abuse its discretion or intrude upon the exclusive province of the jury when it rejected the jury's determination that Ms. Bell was not injured as a proximate cause of the accident. The clear and uncontroverted evidence at trial showed that (1) Mr. Tyree admitted liability for the accident; (2) immediately following the accident, Ms. Bell was transported by ambulance to the hospital, where she received testing and treatment; (3) Ms. Bell was diagnosed as having a cervical strain sprain for which she underwent medical treatment, including physical therapy; and (4) Nurse Practitioner Hill and Physical Therapist McClung testified that the care they rendered Ms. Bell and the cost of that care were reasonable and necessary. Finally, Mr. Tyree's own expert, Dr. Adams, testified that Ms. Bell suffered a cervical strain sprain as a result of the accident and that a month or so of physical therapy was appropriate for such an injury. Accordingly, we conclude that the circuit court properly granted Ms. Bell's new trial motion because the jury's verdict was against the clear weight of uncontroverted evidence.

Mr. Tyree next argues that the circuit court erred in finding that "the only charge of the jury was to determine damages to [Ms. Bell]" because he admitted liability and Ms. Bell presented evidence of her injuries and damages. Mr. Tyree bases this argument on Syllabus Point 1 of *Matthews v. Cumberland & Allegheny Gas Co.*, 138 W.Va. 639, 77 S.E.2d 180 (1953), in which we held that "in order to recover in an action based on negligence the plaintiff must prove that the defendant was guilty of negligence and that such negligence was the proximate cause of the injury of which the plaintiff complains." Mr. Tyree highlights that the trial court instructed the jury that it should consider damages only for those injuries proximately caused by the accident. Accordingly, Mr. Tyree argues that because the jury found Ms. Bell was not injured as a proximate result of the accident, the jury properly awarded no damages.

We reject this second assignment of error for the same reasons we rejected petitioner's first assignment of error: The jury's verdict was against the clear weight of the evidence. Thus, the circuit court correctly concluded that the jury's only duty was to determine damages.

Mr. Tyree's third assignment of error is that the circuit court misinterpreted *Gunno v. McNair*, No. 15-0825, 2016 WL 6805006 (W.Va. Supreme Court, Nov. 17, 2016) (memorandum decision), because the *Gunno* jury found the plaintiff was injured as a proximate result of the automobile accident, whereas, in this case, the jury did not find Mr. Tyree proximately caused Ms. Bell's injuries.

In *Gunno*, another negligence case resulting from a vehicular accident, the plaintiff, Ms. Gunno, appealed the circuit court's denial of her motion for a new trial where the jury found that she was injured as a proximate result of the defendant's negligence, but awarded her no damages. On appeal, we determined that

> there is no factual dispute that [r]espondent caused the accident and that [p]etitioner suffered injuries as a result of that accident. While there may be dispute as to whether the pain [p]etitioner experienced after her fall, which occurred about a month after the accident, was attributable to the accident, it is uncontroverted that prior to the fall, [p]etitioner experienced pain. Furthermore, [r]espondent's expert witness acknowledged that [p]etitioner's injuries would cause pain.

*Id.* at *4. Accordingly, we found that an award of zero damages was "inherently inconsistent with the finding that [Ms. Gunno] was injured as a proximate result of the accident." *Id.* We also found that "[p]etitioner's past pain and suffering [was] amply supported by her own testimony, her husband's testimony and the testimony of her treating chiropractor." *Id.* We therefore affirmed the trial court's ruling that Ms. Gunno was "entitled to a new trial to determine her damages as a result of [the r]espondent's negligence." *Id.*

Mr. Tyree makes much of the fact that the *Gunno* jury found Ms. Gunno was injured as a proximate result of the automobile accident, whereas, in the instant case, the jury did not find Mr. Tyree proximately caused Ms. Bell's injuries. We find that the circuit court did not err in relying on *Gunno* in the order on appeal. First, and again, the jury's "no proximate cause" finding in the instant case was against the clear weight of the evidence. Second, in *Gunno,* as in

7

the instant case, there was no question of fact as to who caused the accident, and petitioner's injury and the need for some treatment were supported by ample testimony. Moreover, *Gunno* stands for the proposition that, where there is uncontroverted proof that the defendant proximately caused at least some physical and pecuniary injuries, a zero dollar verdict cannot stand. Accordingly, *Gunno* supports the circuit court's finding in this case that the zero dollar verdict cannot stand. Hence, we find no abuse of discretion.

Mr. Tyree's fourth and final assignment of error is that the circuit court's delay in ruling on his motions for a new trial prejudiced him. Specifically, Mr. Tyree argues that cases do not get better with time, that memories fade, and that witnesses may become unavailable. Mr. Tyree then notes that his expert, Dr. Adams, closed his practice and, therefore, may not be available to testify at the newly-ordered trial. Mr. Tyree also argues that the circuit court's recollection of the evidence presented at trial no doubt faded between the date of trial and the date it entered its order on November 6, 2017.

Although the circuit court's considerable delay in ruling on Ms. Bell's Rule 59 motions is regrettable, Mr. Tyree fails to show that the delay rises to the level of an abuse of discretion. First, Mr. Tyree fails to point to any specific evidence to support his claim of prejudice, other than the closing of Dr. Adams's practice. By this statement, Mr. Tyree implies that Dr. Adams may not be available; however, Mr. Tyree does not state whether he asked Dr. Adams about availability. Further, Mr. Tyree puts forth no proof that the trial court's delay will affect his case more than it will affect Ms. Bell's case. Finally, regarding Mr. Tyree's claim that the circuit court judge's memory must have faded during its delay in ruling on Ms. Bell's Rule 59 motions, we note that the record of this case was no doubt available to the circuit court and supports the circuit court's order.

Accordingly, for the foregoing reasons, we affirm the circuit court's November 6, 2017, order granting Respondent Pamela Bell's Rule 59 motion for a new trial.

Affirmed.

**ISSUED:** November 16, 2018

**CONCURRED IN BY:**

Chief Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice Evan H. Jenkins
Justice Paul T. Farrell sitting by temporary assignment